## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| DAVID M. OATES, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 2:19-cv-01171-SLP |
| v. | Judge Scott L. Palk |
| KINDER MORGAN ENERGY PARTNERS, LP. | |
| *Defendant*. | |

## CLEVELAND INTEGRITY SERVICES, INC.'S
## MOTION TO INTERVENE AND SUPPORTING BRIEF

This lawsuit claims that Kinder Morgan Energy Partners, L.P. ("Kinder Morgan") failed to comply with the Fair Labor Standards Act ("FLSA"). Floyd Shropshire ("Shropshire") filed a notice of consent to opt-in as a plaintiff pursuant to 29 U.S.C. § 216(b) on April 2, 2020. Dkt. 25. Mike Snow ("Snow") filed a similar opt-in form on May 8, 2020. Dkt. 29. But, Snow and Shropshire were employed by and paid by Cleveland Integrity Services, Inc. ("CIS"), a pipeline inspection services company.

As their employer, CIS moves to intervene pursuant to Federal Rule of Civil Procedure 24 to address Snow's and Shropshire's employment claims. CIS determined the central issues in their potential claim for overtime under the FLSA: whether their pay and their duties qualify for overtime-exempt status. Plus, each executed an arbitration agreement as a condition of their employment that commits each to pressing his FLSA claims only in arbitration. CIS's status as Snow's and Shropshire's employer and its

arbitration agreement encompassing their claims justify both intervention as of right and permissive intervention

## I.    FACTUAL BACKGROUND

### A.    CIS's Relationship with Kinder Morgan

CIS provides third-party inspection services for its customers and thus sends inspectors to their projects. (Declaration of Michael Frye (attached as Ex. 1) at ¶ 3). This is comparable to a CPA firm sending auditors to its clients.  In both instances, there is a compelling logic for having truly independent inspections done.

Pipeline inspectors, like auditors, are hired to work independently, just like auditors:

> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.        And, because this inspection work requires specialized personnel for only the duration of the project, these assignments are for a finite period.

Kinder Morgan is one of CIS's customers. (Frye Declaration at ¶ 4).  CIS controlled and directed its employees to provide the inspection services that Kinder Morgan requested. (Frye Declaration at ¶ 5).  Kinder Morgan paid CIS an all-inclusive rate to

compensate it for the services it provided; that rate covered CIS's overhead, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law. (Frye Declaration at ¶ 6).   From that amount, CIS, in its sole discretion, determined how much to pay each of its inspectors. (Frye Declaration at ¶ 6).

### B.       CIS's Employment of Snow and Shropshire

CIS employed Snow as a welding inspector and assigned him to Kinder Morgan to provide services on its behalf from September 5, 2017 until October 27, 2017. (Frye Declaration at ¶¶ 7, 13).  CIS employed Shropshire as a utility inspector and assigned him to Kinder Morgan to provide services on its behalf from October 27, 2018 until February 9, 2019. (Frye Declaration at ¶¶ 15, 22).

As their employer, CIS determined Snow's and Shropshire's pay. (Frye Declaration at ¶¶ 11, 20).  CIS paid Snow and Shropshire a guaranteed "minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations.  (Frye Declaration at ¶¶ 11, 14, 20, 23); *see* 29 C.F.R. § 541.604(b).  CIS also determined that Snow's and Shropshire's pay and duties qualified them as overtime exempt administrative employee under the FLSA. (Frye Declaration at ¶¶ 12, 21); *see also* 29 U.S.C. § 213.

Before being hired, Snow and Shropshire agreed to be subject to CIS's various policies and procedures governing its employees. (*See* Frye Declaration at ¶¶ 10, 18).  In fact, during his hiring and onboarding process, Snow signed or filled out *fourteen* separate documents identifying him as an employee of CIS. (Frye Declaration at ¶ 10).  Similarly, Shropshire signed *fifteen* documents identifying him as a CIS employee, including an Internal Revenue Service ("IRS") W-4 Tax Form. (Frye Declaration at ¶ 18).  Plus, during

Shropshire's employment, Shropshire directed his mortgage lender to verify his employment with CIS. (Frye Declaration at ¶ 19).

Significantly, both Snow and Shropshire executed an arbitration agreement as a condition of their employment with CIS. (Frye Declaration at ¶¶ 8, 16).  Under those arbitration agreements, Snow and Shropshire committed to "arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company." (Frye Declaration, Exs. 3, 19 at ¶ 2).  Snow and Shropshire also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Frye Declaration, Exs. 3, 19 at ¶ 2).

During the approximately five months that he was assigned to Kinder Morgan, CIS paid Snow $19,720.00 in gross salary. (Frye Declaration at ¶ 14).  CIS paid Shropshire $18,060.00 in gross salary during the approximately four months he was assigned to Kinder Morgan. (Frye Declaration at ¶ 23).

While working at Kinder Morgan's worksites, Snow and Shropshire were indisputably employed by and paid by CIS.

## II.    ARGUMENT

This is an FLSA lawsuit alleging a failure to pay overtime.  The central issue to Snow's and Shropshire's FLSA claims, accordingly, is whether they were exempt from the FLSA's overtime requirements.  But, rather than bringing an arbitration claim against the entity that hired them, that determined they was overtime exempt, and that paid them (CIS), Snow and Shropshire have joined this lawsuit against CIS's customer (Kinder Morgan).

4

CIS's status as Snow's and Shropshire's actual employer provides a sufficient interest to intervene.   CIS has an interest in enforcing Snow's and Shropshire's commitment to arbitrate their employment claims as well as an interest in defending against their claims challenging its decision to classify them as overtime exempt.  Permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.

As Snow and his counsel know, other courts have concurred in exactly these circumstances. In *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, (D. Wyo. Nov. 21, 2019), Snow (represented by the same attorneys) brought an FLSA lawsuit against the customer rather than against his actual employer: Applied Consultants, Inc. ("Applied Consultants").   There, the district court allowed Snow's actual employer to intervene. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Nov. 21, 2019) (attached as Ex. 2).

> The logic of the intervention ruling in *Snow* applies equally here:
>
> While Plaintiff [Snow] is seeking to recover solely from Silver Creek [the customer] in the underlying action, there is potential for Applied to be construed jointly and severally liable as a joint employer under the FLSA given the facts of Plaintiff's employment.  Specifically, Applied hired Plaintiff, paid Plaintiff, determined Plaintiff's duties and where and for what companies he would be working, and made the determination that Plaintiff was exempt under the FLSA.  **The Court finds the potential for Silver Creek to claim Applied is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest**.  Applied's interest could also be impaired if Applied is denied permission to intervene in this case.  Without Applied in the case, Silver Creek could argue and assert that Applied is the sole employer, or joint employer, subjecting Applied to potential liability without the ability to defend itself.

Ex. 2 at 6 (emphasis added).

Similarly, in *Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-cv-01080-WSS-LPL, Dkt. 98 (W.D. Pa. Apr. 13, 2020) (attached as Exhibit C), *report and recommendation adopted* No. 2:19-cv-01080-WSS-LPL, Dkt. 111 (W.D. Pa. May 1, 2020), the district court confronted the same exact issue: an FLSA lawsuit brought (again by Snow's and Shropshire's counsel) not against CIS, but rather against CIS's customer. There too, intervention was granted because the CIS "hired the subject employees, . . . determined how much to pay them, and . . . determined that they were exempt from overtime pay." Ex. 3 at 6.

Here too, CIS should be permitted to intervene pursuant to Rule 24(a) and 24(b).[1]

## A.      Rule 24(a)(2): Intervention As Of Right

The Tenth Circuit has distilled Federal Rule of Civil Procedure 24(a)(2) into three parts, explaining that intervention as of right must be authorized if (1) it is timely; (2) the movant has an interest relating to a subject that may, as a practical matter, be impaired or impeded by the disposition of the litigation; and (3) none of the existing parties will adequately represent the movant's interest.  "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *San Juan Cty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2009) (en

---

[1]Pursuant to Federal Rule of Civil Procedure 24(c), CIS attaches as Exhibit 5 a motion to compel arbitration, seeking to enforce its bargain with Snow and Shropshire. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)).  CIS will file a motion to compel arbitration upon the Court's approval of its intervention.

banc).  As a practical matter, CIS's intervention is warranted; indeed, CIS meets all three

requirements.

　　　　**First**, CIS's motion is timely; intervention at this early stage of the litigation and

shortly after learning of Shropshire's and Snow's filing of opt-in forms to join this lawsuit

does not unduly delay or prejudice the rights of the named Plaintiff, Kinder Morgan, Snow,

or Shropshire. *See, e.g., JMA Energy Co., LLC v. BJ Servs. Co.*, *USA*, No. Civ-08-738-M,

2009 WL 1856216, at *2 (W.D. Okla. June 26, 2009) (motion to intervene timely where

suit "is in the initial stages and no substantive motions have been filed" and where, upon

learning of the interest, the intervenors "did not delay in filing their motion to intervene").

　　　　**Second**, the Tenth Circuit has explained that while a "direct, significant, and legally

protectable" interest "would likely justify intervention," *San Juan Cty*, 503 F.3d at 1194, a

sufficient interest need not be legal or direct. *Id*. at 1200, 1203.  Rather, it can be practical

and contingent on the outcome of the litigation. *Id.*  Here, CIS asserts both legal and

practical interests that would be impaired without its participation

　　　**i.**　　　The central issue to Snow's and Shropshire's claims is whether their pay and

duties qualified them for an overtime exemption under the FLSA.  CIS has a legal and

practical interest in the adjudication of this issue because, as their employer, it set Snow's

and Shropshire's job duties, exclusively controlled their pay, classified them as overtime

exempt, and maintains the employment records upon which their case is predicated.

　　　　If CIS cannot intervene in this lawsuit, its ability to defend against Snow's and

Shropshire's claims that their compensation ran afoul of the FLSA would as a practical

matter be limited.  Specifically, CIS would be deprived of the "opportunity to raise

arguments and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, Civil Action No. 15-6111(FLW), 2016 WL 5422063, at \*4-5 (D.N.J. Sept. 28, 2016) (granting motion to intervene where the intervenor could be held liable without having opportunity to dispute that liability; the intervenor's interest in raising its defenses was impaired and could not be cured "simply because [the intervenor] has an opportunity to defend against an indemnification claim by [the defendant]").

Moreover, any FLSA liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) (providing "that [a] joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions . . ."). The potential that CIS - - Snow's and Shropshire's employer -- may be jointly liable with Kinder Morgan (if either is able to show that Kinder Morgan was also his employer) is a legally sufficient interest for intervention. *Kansas Public Emp. Retirement Sys. v. Reimer & Kroger Assoc., Inc.*, 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).[2]

**ii.**     CIS not only has an interest in vindicating its proper classification of Snow and Shropshire as overtime exempt but also has a distinct legal interest in enforcing their

---

[2] *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at \*3-4, 6 (N.D. Tex. Nov. 29, 2017) illustrates the potential risk to a joint employer. There, the court stayed all proceedings in a FLSA suit against all joint employers after one joint employer filed a notice of bankruptcy because "[i]t is possible that a judgment under the FLSA against the [non-bankrupt joint employers] . . . would affect, and perhaps could be held binding on, the debtor [bankrupt joint employer's] estate." *Id*. That risk not only warranted a stay in that case but also manifestly establishes the practical interest for intervention here.

arbitration agreements.   Moving forward without CIS could result in Snow and Shropshire being able to avoid the arbitration forum in which he committed to bring his individual employment claims. This would deprive CIS of the benefit of the bargain it struck with Snow and Shropshire: in exchange for employing them and paying them significant compensation, CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

That interest is genuine.  Indeed, in Snow's FLSA case in the District of Wyoming, the court compelled arbitration of his claims both against his actual employer and against its customer.   Significantly, the language of Snow's arbitration agreement here (and Shropshire's too) is identical to the contractual commitment construed there as requiring arbitration. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 41 (D. Wyo. Mar. 3, 2020) (attached as Ex. 4) (granting motion to compel arbitration because the agreement plainly required arbitration of all employment claims, regardless of whom they were brought against).

**Third**, CIS's interest is not adequately represented by the existing parties.  As *Robertson* recognized, "[a]lthough the interests of [CIS] are like those of [Kinder Morgan], they diverge in that [CIS is] the entit[y] that determine and cut the paychecks; they also have employment contracts with the opt-in plaintiff[] that [Kinder Morgan] does not." Ex. 3 at 8.

Kinder Morgan lacks the records and witnesses to defend an employment claim from an individual that it never employed.  Kinder Morgan did not classify Snow and

9

Shropshire as FLSA exempt so CIS's "superior understanding" of their employment classification and "greater access to relevant documents and individuals may result in" its "interests being inadequately represented" if it is not allowed to intervene. *Advanced Dynamic Interfaces, LLC v. Aderas, Inc.*, C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at \*1 n.1 (D. Del. Jan. 11, 2013) (granting intervention in a patent suit brought against intervenor's customer because the company was the creator and manufacturer of the products at issue).

Additionally, there is "the distinct possibility" that Kinder Morgan and CIS "may point the proverbial finger at each other" at some point in the litigation (*Snow*, Ex. 2 at 8) or that Kinder Morgan may have an incentive to settle rather than press a full defense of CIS's pay practices (especially where CIS is one of many inspection services companies Kinder Morgan utilizes, as illustrated by the named Plaintiff and other opt-ins). Indeed, Kinder Morgan and Plaintiff already sought to stay this case to explore settlement. Dkt. 31. There is, thus, an appreciable risk of a settlement that disadvantages CIS. *See Kane Cty. Utah v. United States*, 928 F.3d 877, 895-96 (10th Cir. 2019) (finding inadequacy of interest where the defendant took actions indicating that it was inclined to settle the claims impacting the intervenor; "although [the intervenor] would not be entitled to veto any settlement agreement . . . any settlement will require court approval . . . . [a]nd [the intervenor] will be entitled to present evidence and have its objections heard at the hearings on whether to approve such a settlement") (internal quotation marks and citations omitted).

### B.      Rule 24(b)(1)(B): Permissive Intervention

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations.  CIS timely asserts defenses that share with the main action both common questions of law and fact.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Snow's and Shropshire's arbitration commitment.  That common issue itself warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Robertson*, Ex. 3 at 10 (determining whether a court is the proper forum for an FLSA claim given an arbitration agreement is a common question of law);

There are also **common questions of fact**.  The central issue is whether Snow's and Shropshire's pay and duties qualify as overtime exempt under the FLSA.  These questions cannot be resolved without addressing the actions of CIS, which paid that salary and determined that those duties met the administrative exemption requirements under the FLSA.  CIS asserts a defense -- that it properly classified Snow and Shropshire -- that shares common facts with any evaluation of the merits of their FLSA claims. *Robertson*, Ex. 3 at 11 ("Any determination that Enbridge [the sued customer] violated the law would be based on the joint employment relationship, which would implicate the potential Intervenors" such that there are common questions of fact weighing in favor of permissive

intervention); *Snow*, Ex. 2 at 10 (allowing Applied Consultants in an FLSA suit brought against that company's customer "adds value and significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

## III.   CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Dated: June 1, 2020                                 Respectfully submitted,


/s/ Paul DeMuro
Paul DeMuro, OBA # 17605
FREDERIC DORWART, LAWYERS PLLC
Old City Hall
124 East Fourth Street
Tulsa, Oklahoma 74103
(918) 583-9922 - Telephone
(918) 583-8251 – Facsimile
pdemuro@fdlaw.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 – Telephone
(312) 884-7700 – Facsimile
rcowen@mwe.com

Counsel for Intervenor,
Cleveland Integrity Services, Inc.

## CERTIFICATE OF SERVICE

The undersigned does certify that on the 1st day of June 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.


/s/ Paul DeMuro
Paul DeMuro

13