UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID M. OATES, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>KINDER MORGAN ENERGY PARTNERS, LP.,<br><br>    *Defendant*.<br><br>v.<br><br>CLEVELAND INTEGRITY SERVICES, INC.<br>    *Intervenor*. | Civil Action No. 5:19-cv-01171-SLP<br>Judge Scott L. Palk |

**CLEVELAND INTEGRITY SERVICES, INC.'S MOTION TO COMPEL ARBITRATION AND SUPPORTING BRIEF**

**I.     INTRODUCTION**

This lawsuit claims that Kinder Morgan Energy Partners, L.P. ("Kinder Morgan") failed to comply with the Fair Labor Standards Act ("FLSA"). Floyd Shropshire ("Shropshire"), Mike Snow ("Snow"), James Whitaker ("Whitaker"), and Richard Hughes ("Hughes") (collectively the "CIS Quartet") filed notices of consent to join as a party plaintiff pursuant to 29 U.S.C. § 216(b). (Dkt. 25, 29, 70, 82.)

But, each were employed by and paid by Cleveland Integrity Services, Inc. ("CIS"), a pipeline inspection services company. CIS hired them, set and paid their compensation, determined their duties, and decided each was overtime exempt under the FLSA. CIS assigned each as part of its teams providing inspection services to Kinder Morgan's

1

jobsites. Critically, the CIS Quartet each committed "to arbitrate all claims that have arisen or will arise out of Employee's employment with . . . the Company regardless of whether those are claims under common law or under statutory law."

CIS previously brought a motion to enforce those commitments by Messrs. Shropshire, Snow, Whitaker, and Hughes. (Dkt. 144.) In light of the ongoing settlement negotiations and potential that a settlement may moot the need for arbitration, this Court denied that motion to compel arbitration "without prejudice as premature." (Dkt. 180.)

The Parties have reached an impasse on the settlement of the CIS Quartet's claims. What is more, counsel for the CIS Quartet has indicated that they will ask for a Rule 41(a)(2) dismissal so that the CIS Quartet can bring their claims in a more favorable forum—Texas—and avoid arbitration to fashion a collective action settlement encompassing non-party CIS employees of the type this Court has already rejected. *See, e.g.*, *Lindsey v. ONEOK, Inc.*, No. 7:19-cv-00284-DC (W.D. Tex.).

The time is, therefore, now to re-raise the need for the CIS Quartet to follow their contractual commitments and arbitrate their claims. There are two separate grounds that warrant an order compelling arbitration.

***First,*** even the threshold issue of whether the CIS Quartet are obliged to arbitrate is itself a matter delegated to the arbitrator for his/her determination. Each member of the quartet agreed to be bound by American Arbitration Association Rules ("AAA Rules") delegating such questions of arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("When the parties' contract delegates the

arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue.").

**Second,** the text of the arbitration agreements for each member of the CIS Quartet requires arbitration of all of employment-based claims, regardless of whom is named a defendant. *See, e.g.*, *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F. Supp. 3d 1168 (D. Wyo. 2020) (addressing the very same Snow who is a member of this CIS Quartet; applying an identical arbitration agreement; and granting the motion to compel arbitration in a lawsuit brought against its customer because the plain language of the agreement encompassed FLSA claims against the customer).

## II.     FACTUAL BACKGROUND

### A.     CIS's Relationship with Kinder Morgan

CIS is a third-party inspection company. (Declaration of Michael Frye (filed as Dkt. 37-1) at ¶ 3.)  It employs inspectors who provide independent oversight and assurance over the construction of its customers' pipeline infrastructure projects. (Frye Declaration at ¶¶ 3, 5.)  Kinder Morgan is one of CIS's customers. (Frye Declaration at ¶ 4).  Kinder Morgan paid CIS an all-inclusive rate to compensate it for the services it provided; from that amount, CIS, in its sole discretion, determined how much to pay each of its inspectors. (Frye Declaration at ¶ 6).

### B.     CIS's Employment of Snow, Shropshire, Whitaker, and Hughes

CIS employed each of the CIS Quartet and assigned them to its teams providing inspection services to Kinder Morgan. (Frye Declaration at ¶¶ 7, 13, 15, 22; Supplemental Declaration of Michael Frye (filed as Dkt. 144-1) at ¶ 28.)

As their employer, CIS determined each's pay. (Frye Declaration at ¶¶ 11, 20; Supplemental Frye Declaration at ¶ 29.)  CIS paid those four a guaranteed "minimum weekly salary equal to four times the daily salary amount" based on FLSA regulations. (Frye Declaration at ¶¶ 11, 14, 20, 23; Supplemental Frye Declaration at ¶ 29); *see* 29 C.F.R. § 541.604(b).  CIS also determined that the pay and duties of the CIS Quartet qualified them as overtime exempt employee under the FLSA. (Frye Declaration at ¶¶ 12, 21; Supplemental Frye Declaration at ¶ 30); *see also* 29 U.S.C. § 213.

Significantly, the CIS Quartet executed arbitration agreements as a condition of their employment with CIS. (Frye Declaration at ¶¶ 8, 16; Supplemental Frye Declaration at ¶ 32.)  Under those arbitration agreements, each member of this CIS Quartet committed to "arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company." (Frye Declaration, Exs. 3, 19 at ¶ 2; Supplemental Frye Declaration. Exs. 1-2, at ¶ 2.)  Their arbitration agreements also promised that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Frye Declaration, Exs. 3, 19 at ¶ 2; Supplemental Frye Declaration. Exs. 1-2, at ¶ 2.)  Further, each committed that arbitration shall be conducted in accordance with the AAA Rules. (Frye Declaration, Exs. 3, 19 at ¶ 4; Supplemental Frye Declaration. Exs. 1-2, at ¶ 4.)

### III.   PROCEDURAL STATUS

On February 10, 2021 -- while CIS's intervention motion was pending -- Oates and Kinder Morgan filed a Joint Notice of Partial Settlement. (Dkt. 87.)  That notice reported a settlement for inspectors assigned to Kinder Morgan by eight different inspection companies, explicitly excluding inspectors from CIS and another inspection company.

On March 22, 2021, this Court issued an Order to Show Cause why the matter should not be dismissed because Oates and Kinder Morgan had ignored court deadlines. (Dkt. 101.)

Eight days later -- on March 30 -- Oates and Kinder Morgan filed an Amended Joint Notice Of Settlement, reporting a settlement for all claims in this matter, including those "previously excluded from the Parties' Settlement." (Dkt. 102.)

Oates then filed a motion for leave to file the settlement under seal. (Dkt. 106.) This Court denied that motion, noting that FLSA settlements approved by a court should be presumed public. (Dkt. 119.) The Settlement and accompanying approval motion were then openly filed on May 25, 2021. (Dkt. 122.)

That filing spelled out that the Settlement includes not just the nineteen individuals who had filed the FLSA-mandated consents but also over 1,300 unknown individuals who never filed the consents the FLSA requires -- including 178 additional CIS employees.

In light of the settlement approval motion, this Court asked for supplemental briefing addressing the impact of the proposed settlement on CIS's pending intervention motion. (Dkt. 123.) CIS's supplemental brief not only reiterated its earlier grounds but also explained that intervention is separately warranted to raise objections to a settlement and previewed the objections it would later raise. (Dkt 124 at 6.)

After a hearing, this Court granted CIS's intervention. (Dkt. 139.) CIS then filed three motions: (1) a motion to compel arbitration of its four employees who have filed consents in this matter (Dkt. 144); (2) a motion to set briefing schedule on settlement approval following a determination on two discrete discovery requests CIS issued to

5

Kinder Morgan (Dkt. 145); and (3) a motion to compel that discovery. (Dkt. 169.) Absent a briefing schedule, CIS filed a response brief outlining the various reasons why the settlement could not be approved. (Dkt. 175.)

The Court denied Oates' motion for settlement approval. (Dkt. 176.) In doing so, this Court explained that Oates could not have a settlement without following the procedures for collective certification. It also explained that (1) the release Oates and Kinder Morgan proposed might be too broad, (2) the settlement could not be confidential, (3) the settlement could not be fairly evaluated and approved "before other putative settlement participants have been given the chance to opt in" and with only "estimates" as to the overtime each theoretical member of the collective might be owed were they to opt in; (4) the attorney's fee award could not be fairly determined without knowing the size of the collective; and (5) the proposed notice was defective because it failed to explain various rights to potential collective members.

The denial was without prejudice to refiling a settlement proposal that corrects the deficiencies the Court identified. The Court also then denied CIS's motions while granting a motion to quash subpoena for information to effectuate the denied settlement. (Dkt. 176, 177, 178, 180.) In particular, the motion to compel arbitration was denied without prejudice to refiling if the Court did not approve a settlement encompassing the CIS Quartet. (Dkt. 180.)

On June 7, 2022, this Court issued another Order. (Dkt. 179.) It noted that Oates and Kinder Morgan had done nothing in five months to advance their case, and ordered an in person status conference for June 30, 2022 to "address their efforts to progress this case

6

in compliance with the Court January 18, 2022 Order" or "show cause why this case should not be dismissed for failure to prosecute."

On June 30, Kinder Morgan and Plaintiffs informed the Court that there was a new settlement excluding any workers—whether parties or not—employed by CIS. (Dkt. 184.) This Court ordered a motion for conditional certification and approval of notice to be filed on July 14, 2022. (Dkt. 185.)  In addition, CIS sought to settle the claims of the CIS Quartet who are parties to this lawsuit.  Those discussions have reached impasse.  Rather than proceed before this Court or settle the claims, counsel for the CIS Quartet has indicated that they will ask for a Rule 41(a)(2) dismissal so that the CIS Quartet can bring their claims in a more favorable forum—Texas—and avoid arbitration to attempt to fashion a collective action settlement encompassing non-party CIS employees of the type this Court has already rejected. *See, e.g. Lindsey v. ONEOK, Inc.*, No. 7:19-cv-00284-DC (W.D. Tex.).

CIS, therefore, asks this Court to compel the CIS Quartet to arbitrate their claims.

## IV.     ANALYSIS

The Federal Arbitration Act ("FAA") allows:

> A *party aggrieved* by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for the agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in the agreement.

9 U.S.C. § 4 (emphasis added).  Cypress is a party aggrieved:

➤ Having been permitted to intervene, CIS is a party to this lawsuit. *Alvarado v. J.C. Penney Co., Inc.*, 997 F.3d 803, 805 (10th Cir. 1993) ("We agree that when a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.") (internal quotation marks and citation omitted).

➤ CIS is aggrieved by the CIS Quartet's decision to go outside the bounds of the dispute resolution procedures that CIS contracted for and instead make their FLSA claim against its customer regarding the compensation CIS indisputably paid them. Simply, because CIS made the exemption determination at issue, it is dragged into a forum outside of what it contracted for.

This Court should issue an order directing the CIS Quartet to arbitrate their claims. Here, there are valid arbitration agreements between each member of the quartet and CIS. Those agreements first delegate to the arbitrator the decision on whether these claims must be arbitrated under those agreements. The agreements further commit each signatory to arbitrate the merits of their claims, which indisputably arise out of their employment with CIS: they each challenge the propriety of the pay that CIS paid them.[1]

### A.   Arbitrability Is To Be Decided By The Arbitrator

In any dispute regarding arbitration, there are two questions: (1) is there a valid agreement to arbitrate and (2) does that agreement to arbitrate encompass the claims sought

---

[1] Further confirming that arbitration is the right result, the Tenth Circuit has twice determined that arbitration is required in the same exact factual scenario is here even if it is the non-signatory customer seeking to compel arbitration. *Reeves v. Enterprise Prod. Ptnrs. L.P.*, 17 F.4th 1008 (10th Cir. 2021); *Ferrell v. SemGroup Corp.*, No. 20-5092, 20-5093, 2021 WL 5576677 (10th Cir. Nov. 30, 2021).

to be arbitrated. *Cavlovic v. J.C. Penney Corp.*, *Inc*., 884 F.3d 1051, 1057 (10th Cir. 2018). The first question (formation) is always for the courts. But, the second question can be delegated to the arbitrator.

On this, the Supreme Court has been emphatic:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. **In those circumstances, a court possesses no power to decide the arbitrability issue.** That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 530 (2019) (emphasis added). Simply, "[i]f a valid arbitration agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*.

Here, the CIS Quartet agreed that the arbitrator decides whether the arbitration agreement requires arbitration. The text of the arbitration agreements provides that arbitration shall be conducted in accordance with the AAA Rules. (Frye Declaration, Exs. 3, 19 at ¶ 4; Supplemental Frye Declaration. Exs. 1-2 at ¶ 4.) Those AAA Rules, in turn, give the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Ass'n, *Employment Arbitration Rules and Mediation Procedures* R. 6(a) (2019). That incorporation of AAA Rules clearly and unmistakably delegates issues of arbitrability to the arbitrator. *Dish Network LLC v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018).

The CIS Quartet cannot dispute the formation or validity of their agreements -- each signed an identical agreement. So, the only question is whether the arbitration agreements cover their instant FLSA claims: an issue that each delegated to the arbitrator.

Quite simply, it is up to the arbitrator to determine whether the scope of the CIS Quartet's commitment to arbitrate all claims that have arisen out of their employment includes their current FLSA claims. *Cf. Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (explaining that the question of the "scope of agreements" "include[s] the question of who is bound by them").

Put differently, as an *aggrieved party and signatory* to a *valid* arbitration agreement, CIS moves to compel its employees' controversy -- which arises from their employment -- into arbitration. This "scope" issue is precisely what CIS and the CIS Quartet delegated to the exclusive province of the arbitrator.

District courts in mirror-image cases (each brought by counsel for the CIS Quartet seeking statutory overtime under the FLSA from an inspection company's customer) have held that courts compel arbitration in this context so the arbitrator can decide:

> While Rogers [signatory plaintiff] wishes to frame the issue as "who must arbitrate," the answer is clear: Rogers must arbitrate. The question is whether the MAA between Rogers and Applied [signatory intervenor], which Applied can enforce, is broad enough to cover Rogers' claim against 3Bear [non-signatory defendant]. The Court need not consider whether 3Bear could independently enforce the MAA because Applied seeks its enforcement in this case.

> Given the delegation clause, this Court lacks the authority to decide whether this claim falls within the MAA and must instead grant Applied's Motion to Compel Arbitration and commit such decisions to the arbitrator

*Rogers v. 3Bear Energy, LLC*, No. 21-0376 KG/SCY, 2022 WL 1303174, at *4 (D.N.M. May 2, 2022); *see also Doucet v. Boardwalk Pipelines, L.P.*, 4:20-cv-01793, 2021 WL 3674975 (S.D. Tex. Mar. 18, 2021); *Robertson v. Enbridge (U.S.), Inc.*, No. 19-1080, 2020 WL 5751641 (W.D. Pa. July 31, 2020), *report and recommendation adopted by* 2020 WL 5702419 (W.D. Pa. Sept. 24, 2020) (same); *Altenhofen v. Energy Transfer Partners, L.P.*, No 20-200, 2020 WL 7336082 (W.D. Pa. Dec. 14, 2020) (same).

Here, as in each of those cases, there is undeniably an agreement to arbitrate. Here, as in each of those cases, it is exclusively for the arbitrator to decide what that agreement covers under the mandate of *Henry Schein*, *supra*. This Court's only role is to compel the CIS Quartet to arbitrate the arbitrability of their present claims.

**B.    The CIS Quartet's Employment Claims Are Arbitrable**

Even assuming -- contrary to *Schein* -- that this Court decides for itself the arbitrability of this dispute, the plain text of the CIS Quartet's arbitration agreements commits them to arbitrate employment claims regardless of whom each chooses to name as a defendant.

In *Snow*, 467 F. Supp. 3d at 1168, the district court addressed an FLSA claim brought by one member of the CIS Quartet here -- Mike Snow – brought solely against his employer's customer (just like this case). Snow's employer there -- Applied Consultants, Inc. (an affiliate of CIS) -- intervened and then moved to compel arbitration, which the court granted.[2]

---

[2] Snow (unlike the other members of the CIS Quartet) is also bound by collateral estoppel to that ruling. *See Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009) ("Collateral

The CIS Quartet's arbitration agreements in this case defines the "Mutual Agreement" and the "Claims Covered" in literally the same words and the same paragraph numbers as in the arbitration agreement at issue in *Snow*, *supra*. That text is dispositive:

**1. Mutual Agreement**

This Agreement covers all claims by the Employee against the Company or by Company against the Employee. . . .

**2. Claims Covered**

The Employee and the Company agree to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or under statutory law. . . .

*Snow* rightly read each of those paragraphs as distinct promises because any other reading violated the hornbook rule on construing contractual language as meaningless surplus. *See* Antonin Scalia & Bryan A. Gardner, Reading Law: The Interpretation of Legal Texts 174–79 (West 2012) (discussing the surplusage canon; "If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or have no consequence").

---

estoppel bars a party from relitigating an issue once it suffered an adverse determination on the issue, even if the issue arises when the party is pursuing . . . a different claim."). The two Snow agreements use the *exact* same language. The issue in Snow's Wyoming lawsuit is the exact same issue presented to this Court, and the Wyoming court adjudicated the merits of the question, where Snow had full and fair opportunity to litigate the issue.

12

Inescapably, the "Claims Covered" paragraph adds more than what is already set out in the prior "Mutual Agreement" paragraph and explicitly embraces employment claims regardless of who is named as a defendant in pressing those claims:

> Interpreting this agreement as a whole, there is a separate section (paragraph two) specifying which claims are covered. It provides more detail to paragraph one. **If paragraph two only included claims Mr. Snow and Applied had against each other, it would be superfluous to paragraph one and mean nothing**. Paragraph one specifies that any claims the parties have against each other will go to arbitration. Paragraph two says that any claims the parties have regarding Mr. Snow's employment will proceed to arbitration. These provisions read consistently. **It is clear the intent was to cover any claims the parties had against each other *and* claims they had regarding Mr. Snow's employment**. Mr. Snow's claim against Silver Creek falls within the scope of the arbitration agreement.

*Snow*, *supra*, at 1178 (emphasis added).

*Snow* has been adopted in other district courts in mirror-image cases (also brought by the CIS Quartet's counsel), each granting CIS's post-intervention motion to compel arbitration.

***First***, in *Altenhofen v. Southern Star Central Gas Pipeline*, No. 4:20-cv-00030-JHM, 2020 WL 687757 (W.D. Ky. Nov. 23, 2020), the district court compelled arbitration because paragraphs 1 and 2 of the agreement must be read as separate promises.

> Examining the four corners of the agreement, the Court finds that Altenhofen's FLSA claims against Southern Star are claims arising out of his employment with CIS and, as a result, are encompassed by the Mutual Arbitration Agreement. The language in paragraph 1 specifies that any claims the Altenhofen and CIS have against each other will proceed to arbitration. The language contained in paragraph two is much broader—it is not limited to claims Altenhofen and CIS have against each other but covers all the claims the parties have arising from [Altenhofen's] employment. **Interpreting the arbitration agreement as a whole, arbitration is mandated as to any claims the parties had against each other under**

13

> **paragraph one and any claims arising out of Altenhofen's employment with CIS under paragraph two. To read the contract any differently as Altenhofen suggests would render paragraph two meaningless**. A contract is to be construed as a whole, giving effect to each of its parts, and not construed so as to make a provision meaningless, superfluous or of no effect.

*Id*. (internal quotation marks and citations omitted) (emphasis added).

**Second**, *Doucet* likewise found *Snow*'s reasoning sound. There, as a result, the magistrate judge recommended that motion to compel arbitration be granted:

> The *Snow* court's analysis equally applies here. Doucet claims that he was incorrectly determined to be overtime exempt and is owed overtime pay. CIS employed Doucet, paid Doucet, and determined his overtime exemption status. **Thus, Doucet's claims arise directly out of his employment with CIS. This does not change simply because Doucet chose to sue Boardwalk instead of CIS. As the district court in *Altenhofen* stated, to read the contract any differently as Doucet suggests would render paragraph two meaningless.**

*Doucet*, 2021 WL 3674975, at *5 (emphasis added).

This *Snow/Altenhofen/Doucet* reading of the same language is the only reading that respects the bargain made. Under the CIS Quartet's commitments to arbitrate (a condition of employment), each received significant compensation while CIS assured itself of "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

Absent arbitration, CIS may have a duty to pay for defending or indemnifying claims in a forum which CIS Quartet waived and on a class-wide basis, which he also waived. That result steals CIS's bargained-for consideration. Plus, requiring the CIS Quartet to live up to their bargain to arbitrate imposes no diminution of their rights. The

14

arbitration agreements permit a full recovery on their FLSA claims (if not properly classified as overtime exempt) and guarantees procedural protections such as the standards of the Federal Rules of Civil Procedure, discovery, cross-examination, post-hearing briefing, and a written decision.

## V. CONCLUSION

For these reasons, this Court should compel arbitration of FLSA claims pressed by Messrs. Shropshire, Show, Whitaker, and Hughes. The order to arbitrate should specify (consistent with each of their agreements) that arbitration will proceed under AAA Rules and will proceed for each as an individual claim: *i.e.*, "there shall be no class actions, collective actions, or multiple-employee claims of any kind."

Dated: July 11, 2022

Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Rachel B. Cowen
Paul DeMuro, OBA # 17605
FREDERIC DORWART, LAWYERS PLLC
Old City Hall
1 East Fourth Street
Tulsa, Oklahoma 74103
(918) 583-9922 - Telephone
(918) 583-8251 – Facsimile
pdemuro@fdlaw.com

Rachel B. Cowen, *pro hac vice*
McDermott Will & Emery LLP
2 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com
Firm ID No. 90539

## CERTIFICATE OF SERVICE

The undersigned does certify that on the 11th day of July 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

/s/ Rachel B. Cowen

Rachel B. Cowen