# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID M. OATES, Individually and for Others Similarly Situated, | Case No. CIV-19-1171 |
| v. | Hon. Scott L. Palk |
| KINDER MORGAN ENERGY PARTNERS, L.P. | FLSA Collective Action |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY CONDITIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF THE PARTIES' PROPOSED SETTLEMENT AND NOTICE TO THE PROPOSED SETTLEMENT CLASS**

**Michael A. Josephson**
Texas State Bar No. 24014780
OK Fed. ID No. 14-145
**Andrew W. Dunlap**
Texas State Bar No. 24078444
**Lindsay Itkin Reimer**
Texas State Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Michael Burrage**, OBA No. 1350
**WHITTEN BURRAGE**
512 North Broadway Ave., Suite 300
Oklahoma City, Oklahoma
405-516-7800 – Telephone
405-516-7859 – Facsimile

**ATTORNEYS IN CHARGE FOR
PLAINTIFFS**

# TABLE OF CONTENTS

**PAGE**

I.  SUMMARY. ................................................................................................1

II.  FACTUAL & PROCEDURAL BACKGROUND. ........................................2

    A.  The Lawsuit. ....................................................................................2

    B.  The Parties' Proposed Settlement. ...................................................2

    C.  Prior Attempt to Obtain Settlement Approval. .................................3

III.  MOTION FOR PRELIMINARY CONDITIONAL CERTIFICATION OF THE PARTIES' PROPOSED SETTLEMENT CLASS. ...............................4

    A.  Oates is "Similarly Situated" to the Settlement Class Because Kinder Morgan Paid and Classified Them According to a Uniform Plan. ....................5

    B.  Preliminary Conditional Certification and Notice are Appropriate as Oates Showed the Proposed Settlement Class is "Similarly Situated." ..............6

IV.  MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AND PROPOSED SETTLEMENT NOTICE PROCEDURE AND FORMS. ...............................................................9

    A.  General Terms of the Agreement. ...................................................10

        i.  Settlement Amount and Formula for Distribution. ..............10

        ii.  Proposed Settlement Notice Program to Administer the Settlement. ....................................................................12

        iii.  Scope of Settlement Class Members' Release. .....................13

        iv.  Scope of Representative Plaintiff Oates's Release. ...............14

    B.  The Court Should Preliminarily Approve the Parties' Agreement. .................15

        i.  The Legal Standard for Approval of FLSA Settlements. ......17

        ii.  The Settlement Resolves a Bona Fide Dispute. ....................18

        iii.  The Settlement is Fair and Reasonable. ................................19

            a.  The Agreement Was Fairly and Honestly Negotiated by Experienced Counsel, Without Fraud or Collusion. ................20

i

# TABLE OF CONTENTS
### (CONTINUED)

**PAGE**

|   |   |   |   |   |
|---|---|---|---|---|
| | | b. | The Ultimate Outcome of the Litigation Was Unknown. | 22 |
| | | c. | The Value of the Settlement to the Settlement Class. | 22 |
| | | d. | The Parties Agree the Settlement is Fair and Reasonable | 24 |
| | | e. | The Amount of the Settlement in Relation to the Potential Recovery | 25 |
| | | f. | The Stage of Proceedings, Extent of Discovery Completed, and Risks of Continued Litigation. | 26 |
| | | g. | Class Counsel's Fee Award is Reasonable. | 27 |
| | iv. | | The Proposed Service Award is Reasonable. | 28 |
| | C. | | The Court Should Approve the Agreement and Notice Documents. | 30 |
| | D. | | The Requested Attorney's Fees and Costs are Reasonable. | 31 |
| | i. | | FLSA Collective Actions are Inherently Complicated, and Class Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10). | 33 |
| | ii. | | The Time and Labor Required Was Substantial and Class Counsel's Requested Costs Are Reasonable (Factors 1 and 7) | 35 |
| | iii. | | Class Counsel Represented Oates on a Contingency Fee (Factors 5, 6, 10, 12). | 36 |
| | iv. | | Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12) | 37 |
| | v. | | Degree of Success Obtained High (Factor 8). | 38 |
| V. | | | CONCLUSION. | 39 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Jerusalem Restaurant, Inc.*,
No. 14-CV-00933-MEH, 2015 WL 1345326 (D. Colo. Mar. 23, 2015) .............................32

*Aragon v. Clear Water Prod. LLC*,
No. 15-CV-02821-PAB-STV, 2018 WL 6620724 (D. Colo. Dec. 18, 2018) ......... 35, 36, 37

*Austin v. Pennsylvania Dep't of Corrs.*,
876 F.Supp. 1437 (E.D. Pa. 1995) .......................................................................21

*Barbee v. Big River Steel, LLC*,
927 F.3d 1024 (8th Cir. 2019)..............................................................................27

*Beckman v. Keybank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ..........................................................................33

*Belt v. EmCare, Inc.*,
444 F.3d 403 (5th Cir. 2006)................................................................................34

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*,
8 F.3d 722 (10th Cir. 1993) ................................................................................36

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945).............................................................................................16

*Brown v. Phillips Petroleum Co.*,
838 F.2d 451 (10th Cir.1998)...............................................................................32

*Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*,
888 F.3d 455 (10th Cir. 2017)..............................................................................28

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*,
434 U.S. 412 (1978)..............................................................................................31

*Cimarron Pipeline Construction, Inc. v. Nat'l Council on Compensation*,
Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466 (W.D. Okla.
June 8, 1993) .......................................................................................................37

*Cooper v. Coil Chem, LLC*,
No. CIV-16-473-D, 2017 WL 1483550 (W.D. Okla. Apr. 25, 2017)..............................7, 8

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
410 F. Supp. 659 (D. Minn. 1974) ..........................................................21

*Courtright v. Bd. of Cty. Comm'rs of Payne Cty., Okla.,*
No. CIV-08-230-D, 2009 WL 1076778 (W.D. Okla. Apr. 21, 2009)...................................6

*In re Crocs, Inc. Sec. Litig.,*
No. 07-CV-02351-PAB-KLM, 2014 WL 4670886 (D. Colo. Sept. 18, 2014) ...................36

*Davis v. Crilly,*
292 F. Supp. 3d 1167 (D. Colo. 2018).......................................................28

*Dillworth v. Case Farms Processing, Inc.,*
No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).........................................32

*Evans v. Jeff D.,*
475 U.S. 717 ...............................................................................16

*Felix v. Thai Basil at Thornton, Inc.,*
Civ. A. No. 14-cv-02567-MSK-CBS, 2015 WL 2265177 (D. Colo. May 6,
2015) ................................................................................ 19, 20

*Foust v. CPI Sec. Servs., Inc.,*
No. CIV-16-1447-R, 2017 WL 2271482 (W.D. Okla. May 23, 2017) ................................6

*Garcia v. Tyson Foods, Inc.,*
770 F.3d 1300 (10th Cir. 2014)........................................................ 27, 31

*Goode v. Nuance Commc'ns, Inc.,*
No. 17-CV-00472-GKF-JFJ, 2018 WL 3539443 (N.D. Okla. July 23, 2018)......................7

*Gottlieb v. Barry,*
43 F.3d 474 (10th Cir. 1994)...............................................................32

*Gundrum v. Cleveland Integrity Servs., Inc.,*
No. 17-CV-55-TCK-tlw, 2017 WL 3503328 (N.D. Ok. Aug. 16, 2017) ...........................29

*Hargrave v. AIM Directional Servs. LLC,*
No. 21-40496, 2022 WL 1487020 (5th Cir. May 11, 2022) ...................................23

*Hart v. Sandridge Energy, Inc.,*
No. CIV-14-178-R, 2014 WL 2983358 (W.D. Okla. July 1, 2014)........................................8

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)........................................................................32

*Hewitt v. Helix Energy Sols. Grp., Inc.*
15 F.4th 290 (5th Cir. 2021) (en banc), *cert granted*, No. 21-984 (U.S. May 2, 2022) (holding day rate must meet strict salary basis rules of FLSA, but now subject of appeal to the US Supreme Court, with argument scheduled for October 2022) ................................................................................................................23

*Hewitt v. Helix Energy Solutions Grp., Inc.,*
15 F.4th 289 (5th Cir. 2021)..........................................................................................2

*Hoffman v. Poulsen Pizza LLC,*
No. 15-2640-DDC-KGG, 2017 WL 25386 (D. Kan. Jan. 3, 2017) .....................20

*Hoffman-La Roche, Inc. v. Sperling,*
493 U.S. 165 (1989) ........................................................................................................6

*Huddleston v. John Christner Trucking, LLC,*
No. 17-CV-549-GKF-FHM, 2018 WL 7373644 (N.D. Okla. May 1, 2018) .......7

*Hughes v. Gulf Interstate Field Servs., Inc.,*
878 F.3d 183 (6th Cir. 2017)....................................................................................2, 34

*Johnson v. Georgia Highway Express, Inc.,*
488 F.2d 714 (5th Cir. 1974)..........................................................................................33

*Kurgan v. Chiro One Wellness Ctrs., LLC,*
No. 10-CV-1899, 2015 WL 1850599 (N.D. Ill. Apr. 21, 2015) ...........................34

*Langston v. U.S. Sec. Assocs., Inc.,*
No. CIV-18-868-PRW, 2019 WL 4145234 (W.D. Okla. Aug. 30, 2019) ...............4, 5, 6

*Lawson v. Procare CRS, Inc.,*
No. 18-CV-00248-TCK-JFJ, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019) ...............17, 18

*Lewis v. GEO Grp., Inc.,*
No. CIV-08-881-M, 2009 WL 3763821 (W.D. Okla. Nov. 9, 2009) .....................6

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234 (9th Cir.1998)........................................................................................26

*Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,*
Civ. A. No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ................................................................................................29, 32, 38

*Lunt v. Cyclone Drilling, Inc.,*
Civ. A. No. 15-cv-02262-CMA-KMT, ECF No. 28 (D. Colo. Aug. 26, 2016) ........................................................................................19, 21, 37, 38

*Lynn's Food Stores, Inc.* v. *United States,*
  679 F.2d 1350 (11th Cir. 1982)................................................................... 16, 18

*Ma v. Covidien Holding, Inc.,*
  No. SACV 12-02161-DOC, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)...........................26

*McKeon v. Integrity Pizza LLC,*
  No. 18-CV-932-WJM-KLM, 2020 WL 6782238 (D. Colo. Nov. 18, 2020) ......................20

*McKinley v. Mid-Continent Well Logging Serv., Inc.,*
  No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016)......................................27

*Melgar v. OK Foods,*
  902 F.3d 775 (8th Cir. 2018)....................................................................37

*Morris v. MPC Holdings, Inc.,*
  Civ. A. No. 20-cv-02840-CMA-NYW, 2021 WL 4124506 .....................................9

*Morton v. Transcend Servs., Inc.,*
  No. 15-CV-1393-PAB-NYW, 2017 WL 977812 ................................................17

*Ostrander v. Customer Eng'g Servs., LLC,*
  No. 15-CV-1476-........................................................................28

*Parrish v. Directional Drilling, L.P.,*
  917 F.3d 369 (5th Cir. 2019)....................................................................23

*Pilego v. Los Arcos Mexican Restaurants, Inc.,*
  313 F.R.D. 117 (D. Colo. 2016) ................................................................28

*Pogue v. Chisholm Energy Operating, LLC,*
  No. 2:20-CV-00580-KWR-KK, 2021 WL 5861184 (D.N.M. Dec. 10, 2021) ....................9

*Rieve v. Coventry Healthcare, Inc.,*
  11-cv-1032 (ECF Nos. 243-1, 245) (C.D. Cal. 2014) ..........................................26

*Robertson v. REP Processing, LLC,*
  No. 19-cv-02910-PAB-NYW, 2021 WL 4255027 (D. Colo. Sept. 16, 2021) ....................9

*Rosenbaum v. MacAllister,*
  64 F.3d 1439 (10th Cir. 1995)..................................................................32

*Roussell v. Brinker Int'l, Inc.,*
  09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) ......................................34

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
  314 F.3d 1180 (10th Cir. 2002)................................................................17

*Scott v. Antero Res. Corp.*,
  No. 17-CV-693, 2021 WL 2012326 (D. Colo. May 20, 2021), *appeal filed*,
  No. 21-1188 (10th Cir. May 21, 2021) (holding that a day rate drilling
  consultant was not entitled to overtime because he falls under the FLSA's
  highly compensated exemption, and now on appeal but stayed pending
  *Helix* US Supreme Court decision) .......................................................................23

*Singer v. City of Waco, Tex.*,
  324 F.3d 813 (5th Cir. 2003) ....................................................................................38

*Solis v. Top Brass, Inc.*,
  Civ. A. No. 14-cv-00219-KMT, 2014 WL 4357486 (D. Colo. Sept. 3, 2014) ...................19

*Tabb v. Mentor Prot. Serv. LLC*,
  No. CIV-17-1139-D, 2018 WL 5269828 (W.D. Okla. Oct. 23, 2018)................................27

*Thiessen v. Gen. Elec. Capital Corp.*,
  267 F.3d 1095 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002) .................................. 4, 6, 7

*Thompson v. Qwest Corp.*,
  No. 17-cv-1745-WJM-KMT, 2018 WL 2183999 (D. Colo. May 11, 2018) .......................28

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir.1993) .......................................................................................32

*Weiser v. Pathway Servs. Inc.*,
  No. 17-CV-673-GKF-FHM, 2019 WL 6723563 (N.D. Okla. Aug. 26,
  2019) ...........................................................................................................................32

*Whitlow v. Crescent Consulting, LLC*,
  322 F.R.D. 417 (W.D. Okla. 2017) ......................................................................4, 5, 6, 7, 8, 9

*Whittington v. Taco Bell of Am., Inc.*,
  No. 10-cv-01884-KMT-MEH, 2013 WL 6022972 (D. Colo. Nov. 13,
  2013) ............................................................................................................... 33, 35, 38

*Wilson v. Filtrex Serv. Grp., Inc.*,
  No. 18-CV-499-JED-FHM, 2019 WL 7755929 (N.D. Okla. Dec. 19, 2019).......................9

## Statutes

29 U.S.C. § 207 ...................................................................................................................17

29 U.S.C. §216(b)............................................................................................... 6, 10, 27, 31, 32

29 U.S.C. §§ 216(b), 260 ...................................................................................................17

29 U.S.C. § 216(c) ..................................................................................................16

29 U.S.C. § 255 .......................................................................................................18

29 U.S.C. § 255(a) ..................................................................................................17

FLSA ....... 1, 2, 3, 4, 6, 8, 10, 11, 12, 16, 17, 18, 19, 20, 21, 23, 26, 27, 28, 29, 31, 33, 34, 37, 38

I.  **SUMMARY.**

The Parties reached a settlement of the pending dispute concerning unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA); *see* Exhibit 1, Settlement Agreement and Release (the Agreement). As shown below, the Parties' Agreement represents a fair and reasonable resolution of a *bona fide* dispute of Plaintiff and the Settlement Class Members[1]' FLSA claims against Kinder Morgan (and its related entities).[2]

In accordance with the Court's Order (Doc. 176), Plaintiff submits this unopposed Motion and respectfully seeks an Order from the Court: (1) preliminarily conditionally certifying the Parties' proposed Settlement Class; (2) preliminarily approving the Parties' Agreement; and (3) approving the Parties' proposed Notice of Settlement and Claim Form (attached as Exhibit 2[3]) to be sent to the Settlement Class Members.

---

[1] Capitalized terms used in this Motion have the same definition as those same terms contained in the Parties' Settlement Agreement and Release. The Settlement Class Members includes approximately 1,192 inspectors who worked on any Kinder Morgan pipelines in the Class Period (anytime in the last three years plus  an additional 87 days that preceded the earlier of (a) the date the Settlement Class Member filed or otherwise opted-in to the Action, or (b) May 31, 2021, who were sourced to Kinder Morgan through the following third-party vendors: (1) 3B Inspection, LLC; (2) International Inspecting, Inc. d/b/a 3I; (3) FIS Operations, LLC d/b/a Frontier Integrity Solutions; (4) Table Rock Survey, LLC d/b/a Integrated Consulting & Inspection LLC; (5) Natural Energy Field Services, LLC; (6) NV5, LLC; (7) Onshore Quality Control Specialists, LLC; (8) Platte River Inspection Services; and (9) Kestrel Field Services, Inc. (collectively, the Vendor Companies). Ex. 1 at ¶¶ 9 (v), (x).

[2] "Kinder Morgan Entities" means Kinder Morgan Contracting Services, LLC, Gulf Coast Express Pipeline LLC, Kinder Morgan CO2 Company, L.P., Kinder Morgan CO2 Construction Inspection Services, Natural Gas Pipeline Company of America, LLC, KMGP Contracting Services LLC, EPBGP Contracting Services LLC, El Paso Energy Service Company, LLC, Kinder Morgan Inc., and Permian Highway Pipeline LLC.

[3] Exhibit 2-1 represents the Notice of Settlement to be sent to the Settlement Class Members should the Court deny Kinder Morgan's Motion for Reconsideration of the Court's Order regarding the opt-in procedure for the Parties' Settlement. Exhibit 2-2 represents the Notice

II.   FACTUAL & PROCEDURAL BACKGROUND.

A.   The Lawsuit.

Oates filed this putative collective action against Kinder Morgan on December 18, 2019, on behalf of himself and other similarly situated Inspectors. Doc. 1. He alleged Kinder Morgan misclassified him and its other Inspectors as independent contractors and failed to pay them overtime as required by the FLSA. *Id.* Instead of paying the Inspectors overtime, Kinder Morgan paid them a day-rate. *Id.* at ¶¶ 1-4, 10-11, 26-27, 37-40, 45-47; *see, e.g.*, Exhibit 3, Exemplar Timesheets and Pay Records. Oates contends Kinder Morgan's day-rate plan violates the FLSA. *See Hewitt v. Helix Energy Solutions Grp., Inc.*, 15 F.4th 289, 290-91, 297-98 (5th Cir. 2021); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 187, 190 (6th Cir. 2017).

Kinder Morgan denied Oates's allegations and raised several affirmative defenses, including that Oates and certain Inspectors (1) were subject to binding arbitration agreements, (2) were not its employees, (3) were exempt from the FLSA's overtime requirements, (4) were paid lawfully under the applicable law, and (5) that Kinder Morgan acted in good faith. Doc. 12 at 7-11.

B.   The Parties' Proposed Settlement.

Although the Parties dispute liability, they initiated good faith settlement discussions in June 2020. As part of this process, the Parties independently and thoroughly investigated the claims and defenses at issue through informal and formal discovery which allowed the Parties to intelligently, and in good faith, weigh the risks and benefits of continued litigation. On

---

of Settlement to be sent to Settlement Class Members should the Court grant Kinder Morgan's Motion for Reconsideration.

October 23, 2020, after spending months gathering relevant pay data for the Settlement Class from Kinder Morgan's vendors, the Parties attended a full-day mediation with experienced wage-and-hour mediator Michael Russell. While the Parties did not settle at mediation, they continued to negotiate in good faith over the course of the next 3.5 months. After months of negotiation, the Parties reached a comprehensive resolution of this dispute. Thereafter, the Parties spent approximately a month negotiating the specific terms of their agreement, which they memorialized in the settlement agreement they previously submitted to the Court for approval (Doc. 122-1).

### C.     Prior Attempt to Obtain Settlement Approval.

On May 25, 2021, Oates filed his Unopposed Motion to Approve FLSA Settlement. Doc. 122. On January 18, 2022, the Court denied the Motion without prejudice and instructed the Parties to "refile their motion requesting conditional certification and approval of the proposed notice to putative class members" and to "file a motion for final certification and approval of the settlement" after "the to-be-determined opt-in period expires." Doc. 176 at 6. In doing so, the Court indicated it could not approve the proposed settlement until the Parties: (1) move for "conditional certification and notice" so the Court can properly evaluate whether the Agreement is "fair and equitable"; (2) "address the propriety" of the releases contained within the Agreement "or narrow or eliminate them"; (3) evaluate the confidentiality provisions within the Agreement to ensure they do not "contravene the purpose of the FLSA"; (4) address factors regarding "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation," the amount "of hours worked and the applicable wage," and "the maximum amount of recovery to which plaintiffs claim they would

be entitled if they successfully proved their claims"; (5) clarify the size of the Settlement Class and the amount of overtime hours worked; (6) provide more information regarding Kinder Morgan's day rate pay plan; and (7) modify the proposed Notice such that it is consistent with the Court's Order. *Id.* at 7-9, 11-12.

Pursuant to the Court's Order, Oates files this unopposed Motion with additional information and modifications as requested by the Court.

### III.   MOTION FOR PRELIMINARY CONDITIONAL CERTIFICATION OF THE PARTIES' PROPOSED SETTLEMENT CLASS.

Preliminary conditional certification of the Parties' proposed Settlement Class is appropriate because Oates more than meets his burden to demonstrate he, along with the Settlement Class Members, together were the victims of a common policy or plan alleged to violate the law. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002) (holding the standard for conditional certification is extremely lenient and requires "**nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan**") (emphasis added); *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 420-21 (W.D. Okla. 2017) (same); *Langston v. U.S. Sec. Assocs., Inc.*, No. CIV-18-868-PRW, 2019 WL 4145234, at *2 (W.D. Okla. Aug. 30, 2019) (same).

Oates alleges Kinder Morgan violated the FLSA by classifying its Inspectors as independent contractors (rather than employees) and paying them a day-rate with no overtime for hours worked over 40 in a week. Doc. 1. Oates contends, and provides testimonial evidence coupled with pay records showing, Kinder Morgan classified and paid all the Inspectors comprising the Parties' proposed Settlement Class in this manner regardless of any

individualized factor. *See* Ex. 3; Exhibit 4, Oates Declaration at ¶¶ 3-5, 7-21; Exhibit 5, Mechling Declaration at ¶¶ 3-5, 7-21; Exhibit 6, Beall Declaration at ¶¶ 3-5, 7-21; Exhibit 7, Knapp Declaration at ¶¶ 3-5, 7-21; Exhibit 8, McMahan Declaration at ¶¶ 3-5, 7-21; Exhibit 9, Asch Declaration at ¶¶ 3-5, 7-21; Exhibit 10, Ricketts Declaration at ¶¶ 3-5, 7-21. Because Oates provides substantial allegations that Kinder Morgan's classification and compensation plan applied to all proposed Settlement Class Members, Oates meets the lenient standard for preliminary conditional certification of the proposed Settlement Class. *Whitlow*, 322 F.R.D. at 420-21; *Langston*, 2019 WL 4145234, *2.

A.   **Oates is "Similarly Situated" to the Settlement Class Because Kinder Morgan Paid and Classified Them According to a Uniform Plan.**

The proposed Settlement Class all worked for Kinder Morgan as Inspectors, were all classified as independent contractors, and were all paid a day-rate regardless of any individualized factors. *See* Exs. 4-10 at ¶¶ 3-5, 7-12. They also all regularly worked more than 40 hours each week without receiving overtime. *Id.* at ¶¶ 13-17, 20-21. Oates alleges Kinder Morgan's classification and day-rate pay practice was widespread and systematically applied to Oates and all Settlement Class Members. *Id.* at ¶¶ 7-12, 16, 19-21; *see also* Doc. 1 at ¶¶ 2, 27, 37-40, 49. Because Oates provided substantial allegations that Kinder Morgan applied this generally applicable pay practice to all Settlement Class Members, this case is appropriate for preliminary conditional certification for purposes of settlement. Kinder Morgan does not oppose preliminary conditional certification for this purpose.

**B.**    **Preliminary Conditional Certification and Notice are Appropriate as Oates Showed the Proposed Settlement Class is "Similarly Situated."**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b); *Whitlow*, 322 F.R.D. at 420 (holding the standard for conditional certification is extremely lenient and requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan") (citing *Thiessen*, 267 F.3d at 1102). District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs they may choose to "opt-in" to the suit or the settlement. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Court-authorized notice prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170-172.

For an opt-in class to be created under the FLSA, an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Whitlow*, 322 F.R.D. at 420-21; *see also Courtright v. Bd. of Cty. Comm'rs of Payne Cty., Okla.*, No. CIV-08-230-D, 2009 WL 1076778, at *1-2 (W.D. Okla. Apr. 21, 2009) (same). The Tenth Circuit approved the use of a two-step "ad hoc" process for determining whether FLSA class members are similarly situated to the named plaintiff. *Thiessen*, 267 F.3d at 1102, 1105. The two-step approach has been applied to numerous FLSA actions in this District *See, e.g., Whitlow*, 322 F.R.D. at 420-21; *Langston*, 2019 WL 4145234 at *2; *Foust v. CPI Sec. Servs., Inc.*, No. CIV-16-1447-R, 2017 WL 2271482, at *1 (W.D. Okla. May 23, 2017); *Lewis v. GEO Grp., Inc.*, No. CIV-08-881-M, 2009 WL 3763821, *1 (W.D. Okla. Nov. 9, 2009).

The first step is known as the "notice stage," where the court determines whether other similarly situated workers exist. At this stage, Oates must only provide "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Thiessen*, 267 F.3d at 1102; *Whitlow*, 322 F.R.D. at 420-21. This standard is "'lenient and typically results in conditional certification'" of a representative class. *Huddleston v. John Christner Trucking, LLC*, No. 17-CV-549-GKF-FHM, 2018 WL 7373644, at *1 n.2 (N.D. Okla. May 1, 2018). A court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations. *Whitlow*, 322 F.R.D. at 421. The notice stage is not the appropriate time for the court weigh evidence or make factual determinations. *Goode v. Nuance Commc'ns, Inc.*, No. 17-CV-00472-GKF-JFJ, 2018 WL 3539443, at *4 (N.D. Okla. July 23, 2018). Nor is it the time to analyze the merits of the Parties' claims or defenses. *Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2017 WL 1483550, at *1 (W.D. Okla. Apr. 25, 2017).

In the second stage, which comes at the conclusion of discovery and often in the context of the defendant's motion to decertify the class, the court applies a stricter standard, including application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102-03. The court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit." *Id.* at 1103.

While Oates has the burden of demonstrating he and the proposed Settlement Class Members are similarly situated, this burden is not a heavy one. *See Thiessen*, 267 F.3d at 1102;

*Whitlow*, 322 F.R.D. at 420. Oates meets this burden by merely pleading facts demonstrating Kinder Morgan subjected him and the proposed Settlement Class Members to a single plan or policy alleged to violate the law (here, Kinder Morgan's day-rate pay plan and contractor classification). Indeed, proof of a single decision, policy, or plan may be provided through the allegations of the complaint, declarations of potential plaintiffs, or documentary evidence. *See Whitlow*, 322 F.R.D. at 421 (finding the allegations of the complaint and the affidavits submitted by day rate oilfield workers sufficient to warrant conditional certification); *Cooper*, 2017 WL 1483550, at *1 ("Plaintiffs need only show their positions are similar, not identical, to the positions held by the rest of the collective class members."); *Hart v. Sandridge Energy, Inc.*, No. CIV-14-178-R, 2014 WL 2983358, at *2 (W.D. Okla. July 1, 2014) ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan.").

Oates more than meets the lenient burden to show conditional certification of the Parties' proposed Settlement Class is appropriate. The record contains substantial allegations that Oates and the Settlement Class Members are similarly situated because Oates alleges they were all victims of a single decision, policy, or plan alleged to violate the FLSA. *See, e.*g., Exs. 3-11. Specifically, Oates alleges he is similarly situated to the proposed Settlement Class because they all: (1) worked for Kinder Morgan as Inspectors during the Class Period performing similar job duties; (2) were classified as independent contractors; (3) were paid on a day-rate basis; and (4) worked more than 40 hours a week without receiving overtime. *Id.*

Thus, preliminary conditional certification of the Parties' proposed Settlement Class is appropriate here.[4]

## IV.  MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AND PROPOSED SETTLEMENT NOTICE PROCEDURE AND FORMS.

The Parties have reached a comprehensive resolution of this dispute which, if approved by this Court, will largely resolve this matter at the final approval stage.[5] Oates now seeks preliminary approval of their Agreement. *See* Ex. 1. The Agreement represents a fair compromise of a *bona fide* dispute concerning the legality of Kinder Morgan's classification and pay practices with respect to Oates and the Settlement Class Members. The Agreement covers the claims of the Settlement Class Members who worked during Class Period and provides them with a meaningful opportunity to recover compensation they are allegedly due. If approved, the Settlement Class will receive notice of the settlement explaining the Agreement, the amount of compensation they are due, and the steps to take to receive their share of the settlement.  *See* Ex. 2.

---

[4] Unsurprisingly, Courts in this Circuit routinely conditionally certify classes involving both day-rate workers and Inspectors. *See, e.g.*, *Whitlow*, 322 F.R.D. at 423 (day-rate drilling consultants); *Wilson v. Filtrex Serv. Grp., Inc.*, No. 18-CV-499-JED-FHM, 2019 WL 7755929, at *2 (N.D. Okla. Dec. 19, 2019) (day rate technicians); *Robertson v. REP Processing, LLC*, No. 19-cv-02910-PAB-NYW, 2021 WL 4255027, at *6 (D. Colo. Sept. 16, 2021) (day-rate inspectors); *Morris v. MPC Holdings, Inc.*, Civ. A. No. 20-cv-02840-CMA-NYW, 2021 WL 4124506, at *3 (D. Colo. Sept. 9, 2021) (same); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-CV-00580-KWR-KK, 2021 WL 5861184, at *4 (D.N.M. Dec. 10, 2021) (day-rate completions or drilling consultants).

[5] Upon entry of the Approval Order, Class Counsel will move to dismiss all of the claims alleged by individuals supplied by the Vendor Companies to Kinder Morgan during the Class Period in this Action with prejudice. Kinder Morgan shall be unopposed to such dismissal. The only remaining claims in this Action involve opt-in plaintiffs supplied by Cleveland Integrity Services to Kinder Morgan. These individuals' claims are not subject to the Parties' Agreement and will be resolved separately.

The Agreement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information over the course of multiple months. The terms of the Agreement are reasonable, appropriate, and fair to all parties and individuals involved. To effectuate the Agreement, Oates asks the Court to preliminarily conditionally certify the Parties' proposed Settlement Class and to preliminarily approve the Parties' Agreement such that notice of the Agreement may be issued to the Settlement Class Members.

### A.      General Terms of the Agreement.

The key details of the proposed settlement are described below and are set forth in the attached Agreement. *See* Ex. 1. Additionally, the Parties attach the proposed Notice of Settlement and corresponding Claim Form that will be used to notify the Settlement Class of their right to participate in this settlement and their rights under the FLSA.  *See* Ex. 2.

### i.      Settlement Amount and Formula for Distribution.

The Parties' proposed settlement obligates Kinder Morgan to pay up to a maximum settlement amount of $3,556,286.00 (the Gross Settlement Amount). If approved, all claims, including claims for Class Counsel's Fee Award (35% of the Gross Settlement Amount, or $1,244,700.10) and out-of-pocket costs (not to exceed $30,000.00), Settlement Administration Costs (not to exceed $30,000.00), and a Service Award to Oates ($7,500.00) will be deducted from the Gross Settlement Amount (resulting in a Net Settlement Amount of $2,244,085.90). Ex. 1 at ¶ 9(k). Because the settlement follows the opt-in structure of the FLSA, only Settlement Class Members who timely return executed settlement Claim Form and Releases (Ex. 2) will be eligible to receive a settlement payment. 29 U.S.C. § 216(b) (only workers who

consent in writing are part of an FLSA collective action). The Parties have briefed their respective positions concerning whether Settlement Class Members may choose to opt-in and not be bound by the Parties' proposed settlement. *See* Docs. 183, 186. In short, the Parties believe those workers who choose not to be bound by the Parties' proposed settlement will not be eligible to receive a settlement payment from the Parties' proposed settlement and will be required to independently pursue their claims against Kinder Morgan either *pro se* or by retaining separate counsel should they wish to pursue claims against Kinder Morgan.

If approved, the balance of the Net Settlement Amount will be apportioned among the Settlement Class Members who elect to participate in the settlement (the Participating Settlement Class Members). The Parties calculated the Settlement Class Members' individual Settlement Awards using payroll and time records obtained from Kinder Morgan and its vendors for each Settlement Class Member. The Settlement Awards are based on the number of overtime weeks worked by each Settlement Class Member multiplied by a fixed work week value of $49.48 (which was determined by dividing the Net Settlement Amount by the total overtime work weeks at issue). *See* Ex. 1 at ¶ 17; Exhibit 11, Josephson Declaration at ¶ 21. So, Participating Settlement Class Members will receive a Settlement Award which accurately reflects the net value of each overtime week they worked during the Class Period. *See* Ex. 11 at ¶¶ 21-22. The Participating Settlement Class Members' individual Settlement Awards will not be reduced based on the number of claims filed. The portion of the Net Settlement Amount attributed to workers who elect not to participate will be returned to Kinder Morgan.

The Parties further agree that 50% of the individual settlement amounts shall be subject to all federal and applicable state income and employment taxes and withholdings as required

by law, as payment in full compromise and settlement of all claims for alleged unpaid overtime back pay or compensation. Ex. 1 at ¶ 18. The remaining 50% of the individual settlement amount shall represent payment in full compromise and settlement of all claims for liquidated damages. *Id.*

> **ii.    Proposed Settlement Notice Program to Administer the Settlement.**

Should the Court preliminarily approve the Parties' Agreement, Oates further asks the Court to approve the Parties' proposed Notice of Settlement corresponding Claim Form (Ex. 2) and direct the Parties to implement and complete the claims process as set forth in their Agreement.

In accordance with the Agreement, Settlement Class Members will receive a copy of the Notice of Settlement Claim Form. *See* Ex. 2. These documents explain in detail the settlement of the lawsuit, why they are receiving the Notice, what the lawsuit is about, what their options are, the effect of participating or not participating in the settlement, their rights under the FLSA, the terms of the settlement, the scope of the release, their Settlement Award and how the amounts were calculated, the steps they must take to participate in the settlement, how and when the settlement will be administered, and what to do if they have further questions. *Id.*

These documents will be mailed to the Putative Class Members by the Settlement Administrator. Ex. 1 at ¶ 11(d). The information will also be sent by email and text message. *Id.* Participating Settlement Class Members will be required to return their properly executed Claim Form to the Settlement Administrator and/or Oates's Counsel within 75 days from the date of mailing or emailing. *Id.* at ¶ 9(l); Ex. 2. Additionally, the Parties agree to provide two

identical reminder notices by mail and email (if applicable) to the Settlement Class 30 and 60 days after the initial mailing of the Notice of Settlement. Ex. 1 at ¶ 11(d). Class Counsel is also permitted to make a single phone call to the Settlement Class Members pursuant to an agreed upon script to confirm receipt of the Settlement Notice. *Id.*; *see also* Exhibit 12, Parties' Proposed Scripts Concerning Settlement Notice.

Following the Notice Deadline (75 days after the initial mailing of the Notice of Settlement), Oates will move for final collective action certification and for final approval of the Parties' Agreement. Ex. 1 at ¶ 13. At this stage, Class Counsel will inform the Court about the participation of the Settlement Class in the settlement. *Id.* Should the Court issue a final approval order, settlement checks will be prepared and distributed by the Settlement Administrator within 60 days from the date of the Court's final approval order. *Id.* at ¶ 20. Participating Settlement Class Members will then have 90 days to present their settlement checks for payment. *Id.* at ¶ 21.

### iii.    Scope of Settlement Class Members' Release.

If approved, Participating Settlement Class Members will provide Kinder Morgan with a limited wage and hour release, which will release Kinder Morgan from all state and federal wage related claims asserted or that could have been asserted in this Lawsuit (the "Released Claims"). *See* Ex. 2. The Released Claims include:

> Any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees[6] for alleged unpaid wages,

---

[6] "Releasees" means Kinder Morgan Entities, and all of their past, present, and future officers, owners, directors, principals, agents, employees, representatives, parents, shareholders, partners, subsidiaries, holding companies, affiliates, predecessors, successors, assigns, insurers, joint venture parties, and related companies, in their individual and corporate capacities that could be regarded, alleged or determined to be a joint employer for the services provided on

liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA and any other state or local wage-related law applicable to the work performed for Kinder Morgan through one or more of the Vendor Companies during the Class Period wherein you were paid a day-rate without overtime for hours worked over 40 in a week. Released Claims expressly do not include any claims that you may have related to work performed on Kinder Morgan's projects on behalf of a vendor other than the Vendor Companies as defined herein.

*See* Ex. 1 at ¶ 9 (p). Importantly, the Participating Settlement Class Members are expressly **not**

releasing any of the Vendor Companies. *Id.* The release is applicable only to Oates and those

individuals who timely return properly executed claim forms. *Id.* at ¶¶ 10 (a)-(b).

### iv.    Scope of Representative Plaintiff Oates's Release.

In addition to the Released Claims and in exchange for release and other

representations and warranties (including the payment of his Service Award), Oates further

agrees to provide Kinder Morgan with a general release of claims. The specific general release

language is as follows and is applicable only to Oates:

Oates shall be deemed to have released and forever discharged Releasees from any and all Released Claims, and, in addition and in exchange for his Service Award, shall be deemed to have released Releasees from any and all claims, demands, rules or regulations, or other causes of action, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; or any allegation for costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract,

---

behalf of the Vendor Companies during the Class Period. Releasees expressly excludes the Vendor Companies (as defined herein). Ex. 1 at ¶ 9(q).

and any other federal, state or local human rights, civil rights, wage-hour, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Action, any claim for breach of contract or tort laws, or any claim arising under common law, such as, without limitation, claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or *respondeat superior*, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees based upon any conduct occurring up to and including the date of the Court's Approval Order. Oates irrevocably waives any right to monetary recovery from the Releasees, whether sought directly by them or in the event any administrative agency or other public authority, individual, or group of individuals should pursue any claim on their behalf. Notwithstanding the previous sentence, this Settlement Agreement does not limit Oates's right to receive an award or payment from a government agency (and not Kinder Morgan) for information provided to any government agency.

*Id.* at ¶ 10(a).

## B.    The Court Should Preliminarily Approve the Parties' Agreement.

Through the life of this collective action, the Parties conducted formal and informal discovery, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in this collective action. Oates sent Kinder Morgan Requests for Production and Interrogatories in April and June of 2020. Kinder Morgan and/or its Vendors produced hundreds of pages of documents, consisting of personnel records, payroll records, tax records, policies and procedures, and documents concerning its business relationship with its vendors.

Between June and September 2020, Oates served 14 subpoenas on Kinder Morgan's Vendor Companies that sourced the Settlement Class Members to Kinder Morgan to obtain documents relating to any arbitration agreements entered into by Settlement Class Members, their payroll records, and communications with Kinder Morgan concerning their work. Ultimately, the Parties (and Kinder Morgan's Vendor Companies) exchanged thousands of

relevant documents that provided the Parties with a wealth of knowledge concerning the claims and defenses asserted.

Based upon the Parties' investigation, legal evaluation, and considering the contested legal and factual issues involved, including Oates's Counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Settlement Class Members pursuant to the Parties' proposed Agreement, the Parties concluded their Agreement is fair, reasonable, adequate, and in the best interests of the Parties and Oates seeks Court approval of the same. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a *bona fide* dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

The Agreement represents a fair compromise of a *bona fide* dispute concerning the legality of Kinder Morgan's compensation practices with respect to the Settlement Class Members. Because the FLSA's provisions are mandatory, employees' claims for back wages or overtime may not be compromised absent either supervision by the Secretary of Labor, *see* 29 U.S.C. § 216(c), or approval by the court. *See Lynn's Food Stores, Inc.* v. *United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). The Tenth Circuit recognized the res judicata effect of a court-approved settlement of FLSA claims, where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the settlement is fair and reasonable in the judgment of the Parties. *Rutter & Wilbanks Corp. v. Shell Oil Co.,*

314 F.3d 1180, 1188 (10th Cir. 2002).

> ###### i.     The Legal Standard for Approval of FLSA Settlements.

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food*, 679 F.2d at 1353). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases). Nevertheless, in FLSA collective action settlements involving potential plaintiffs who are not yet before the court, courts within this Circuit have found the application of *Lynn's Food* appropriate. *Id.* at *2-3. "Under these circumstances, the court

should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1354-55.

### ii.   The Settlement Resolves a *Bona Fide* Dispute.

Congress recognized that, due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank,* 324 U.S. at 706–07. Due to this unequal bargaining power, Courts must ensure that a settlement agreement, following an FLSA claim, must be the product of a *bona fide* dispute.

Here, the Parties contested the claims and defenses asserts. Oates alleged Kinder Morgan misclassified him and the Settlement Class Members as independent contractors and paid them a day rate with no overtime in violation of the FLSA. *See* Doc. 1; Exs. 4-10. Kinder Morgan denies that Oates and the Settlement Class Members are owed any overtime wages and contends that it properly classified and paid them under the FLSA. *See* Doc. 12. Kinder Morgan further contends that, if Oates and the Settlement Class Members were its employees, they were exempt from the FLSA's overtime requirements. *Id.* Kinder Morgan also raises other affirmative defenses to liability, including that Oates and certain Settlement Class Members were subject to arbitration agreements with collective action waivers, as well as contesting Oates's allegations for liquidated damages or that any violation of the FLSA was willful (which in turn affects whether Oates could recover compensation for two or three years, 29 U.S.C. § 255). *Id.*

Further, because Oates and the Settlement Class Members were paid on a day rate basis, Oates alleges Kinder Morgan should have, but did not track these Inspectors' actual hours worked. Indeed, Oates contends he and the Settlement Class Members typically worked 12-hour shifts for 6 or 7 days a week. Doc. 1 at ¶ 26; Exs. 4-10 at ¶¶ 13-16. Kinder Morgan, however, claims Oates and the Settlement Class Members were not its employees, typically only worked 10-hour shifts, in most cases were paid a salary, and were either not entitled to, or exempt from, overtime.

There is no question the Agreement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### iii.    The Settlement is Fair and Reasonable.

The Parties agree the terms of the Agreement are fair and reasonable. To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA's policy rationales. *Lunt v. Cyclone Drilling, Inc.*, Civ. A. No. 15-cv-02262-CMA-KMT, ECF No. 28 at p. 4 (D. Colo. Aug. 26, 2016); *see also Solis v. Top Brass, Inc.*, Civ. A. No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). In determining whether the settlement is fair and reasonable, the Court should note "there is a 'strong presumption in favor of finding a settlement fair[.]'" *Felix v. Thai Basil at Thornton, Inc.*, Civ. A. No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015); *Solis,*

2014 WL 4357486 at *3 (noting a "presumption of fairness attaches to the proposed settlement").

Courts assessing an FLSA settlement for fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[7] *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), abrogated on other grounds by *Delvin v. Scardelletti*, 536 U.S. 1 (2002); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

### a.   The Agreement Was Fairly and Honestly Negotiated by Experienced Counsel, Without Fraud or Collusion.

To start, the Settlement was fairly and honestly negotiated by highly experienced wage-

---

[7] Courts may also consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Felix*, 2015 WL 2265177, at *2.

and-hour attorneys with significant FLSA experience. Counsel for both sides have represented clients in federal and state wage and hour claims (including the settlement of these claims) for many years. *See* Ex. 11.[8]  Here, the Parties gathered substantial data from Kinder Morgan's vendors showing the days worked and compensation received by Oates and the Settlement Class Members. Both Parties created damage models based on this data and were particularly well informed as to the facts and circumstances of the litigation. The Parties went through numerous offer and demand cycles. Settlement negotiations were formally facilitated by an experienced FLSA mediator, Michael Russell, during a full day mediation. Thereafter, the Parties continued their arm's length negotiations for several months. This Settlement was negotiated by experienced counsel with the assistance of an experienced wage-and-hour mediator, which demonstrates the Parties' ultimate Agreement was fairly and honestly negotiated. Further, as reflected by his signature on the Agreement, Oates approves the Agreement because he and the Settlement Class Members are receiving a substantial benefit. *See* Ex. 1.

After the Parties agreed to settle, the Parties engaged in extensive negotiations concerning the specific terms of the Agreement, the notice program, and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the

---

[8] *See Lunt*, Civ. A. No. 15-cv-02262-CMA-KMT, Doc. 28 at 4 (finding settlement fair and reasonable and attributing significant weight to attorneys' professional judgment where counsel had significant experience in prosecuting and/or defending FLSA actions for many years, as here); *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations, and nothing about the Settlement is the result of fraud or collusion. Experienced Counsel for both Parties believes the Agreement is fair and reasonable.

### b.      The Ultimate Outcome of the Litigation Was Unknown.

Questions of law and fact exist as to whether Kinder Morgan is liable to Oates and the Settlement Class Members and, if so, for what amounts. The Parties dispute whether Kinder Morgan properly classified the Settlement Class Members, the hours worked, whether Kinder Morgan acted in good faith (and thus whether liquidated damages are appropriate), and whether Kinder Morgan acted willfully (which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations). The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c.      The Value of the Settlement to the Settlement Class.

Third, the immediate recovery offered by the Settlement is significant given the legal and factual uncertainties related to Kinder Morgan's alleged liability. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in lengthy and costly discovery, significant motion practice concerning arbitration, certification/decertification, and the merits of Kinder Morgan's independent contractor and/or exempt classification policy, and ultimately a potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees that Oates and the Settlement Class Members will receive a substantial recovery.

Indeed, the degree of success here is high because Kinder Morgan vigorously contested Oates and the Settlement Class Members' claims, denied that these Inspectors were improperly paid, improperly classified, underpaid, or that any alleged damages are owed. *See, e.g., Parrish v. Directional Drilling, L.P.*, 917 F.3d 369 (5th Cir. 2019) (finding that day rate directional driller contractors were not employees, and therefore not entitled to overtime); *Scott v. Antero Res. Corp.*, No. 17-CV-693, 2021 WL 2012326 (D. Colo. May 20, 2021), *appeal filed*, No. 21-1188 (10th Cir. May 21, 2021) (holding that a day rate drilling consultant was not entitled to overtime because he falls under the FLSA's highly compensated exemption, and now on appeal but stayed pending *Helix* US Supreme Court decision); *Hewitt v. Helix Energy Sols. Grp., Inc.* 15 F.4th 290 (5th Cir. 2021) (en banc), *cert granted*, No. 21-984 (U.S. May 2, 2022) (holding day rate must meet strict salary basis rules of FLSA, but now subject of appeal to the US Supreme Court, with argument scheduled for October 2022); *Hargrave v. AIM Directional Servs. LLC*, No. 21-40496, 2022 WL 1487020 (5th Cir. May 11, 2022) (holding that day rate directional driller contractors were not employees and therefore not entitled to overtime). Kinder Morgan denied that the Inspectors are entitled to liquidated damages or that it acted willfully. Finally, Kinder Morgan denied that it was the employer of any Settlement Class Member or that it had any obligations to them under the FLSA or any other law.

In spite of the hotly contested case, the Settlement provides the Settlement Class Members with approximately one-third (32%) of the total alleged three-year back wage liability and nearly 40% (37%) of the statutory two-year damages at issue. Ex. 11 at ¶¶ 21-22. The total alleged three-year back wage liability amounted to $11,222,087.86. *Id.* On average, the Parties conservatively estimated each Settlement Class Member worked ten hours each day, earning

an average of $290.00 per day. *Id.* The currently estimated average recovery from the Gross Settlement Amount is $2,983.46, with the maximum Settlement Award being $16,298.55 and the minimum Settlement Award being $379.91. *Id.* Even after the proposed Fee Award and Class Counsel's out-of-pocket expenses, the Net Settlement Amount provides an estimated average net recovery of $1,882.62, with the maximum Settlement Award estimate being $10,284.70 - and the minimum Settlement Award being $239.73. *Id.* This Settlement represents substantial recovery considering the ongoing risks of litigation, the defenses at issue, and the real possibility of a protracted fight for unpaid overtime. Further, because the scope of the settlement (and release) is limited to only Kinder Morgan, the Settlement Class Members have not given up any of their rights to recover additional unpaid overtime from the Vendor Companies should they elect to do so.

### d. The Parties Agree the Settlement is Fair and Reasonable.

The Parties agree that the Settlement is fair and reasonable. The Agreement was signed by Oates and Kinder Morgan. All Settlement Class Members will be provided a Notice of Settlement and may participate in the Settlement should they choose to. If they do not wish to participate in the Settlement, their claims will be unaffected. This supports finding the Parties' settlement to be fair and reasonable. This is especially true given the Settlement Class Members are only providing a release to Kinder Morgan—and only for the time during which they were staffed to Kinder Morgan by a Vendor Company—and any claims they have against the Vendor Companies, as well as those against Kinder Morgan during a time they were not staffed by a Vendor Company, are all expressly preserved.

24

e.      **The Amount of the Settlement in Relation to the Potential Recovery.**

There is no question the value of the Agreement represents fair value for the Settlement Class Members. Numerous workers will receive monies for unpaid overtime without the risk or expense of protracted litigation and trial. This is particularly significant under the circumstances presented here considering the wavering oil and gas economy and the Parties' fundamental disagreements as to the merits of Oates's claims and the possibility the Settlement Class Members could receive no money at all. Each Participating Settlement Class Member will be able to recover a specified amount calculated based upon his/her specific employment history with Kinder Morgan during the Class Period. Indeed, the amounts recovered under the Agreement are fair on both a collective and individual basis.

If approved, Kinder Morgan will pay a maximum amount of $3,556,286.00 under the Agreement to resolve the claims of Oates and the Participating Settlement Class. There are approximately 1,192 Settlement Class Members. *See* Ex. 1 at ¶¶ 9 (v), 17. Based on the extensive payroll and workweek data provided by Kinder Morgan and/or obtained through its Vendors, Oates's Counsel determined the Settlement Class Members' estimated maximum damages (100 percent of the damages the Settlement Class Members potentially could recover if Oates prevailed on all claims alleged against Kinder Morgan, including claims relating to willfulness) amounts to approximately $11,222,087.86 (unliquidated). *See* Ex. 11 at ¶ 22. Oates's Counsel further determined under this scenario, each Settlement Class Member would be owed, on estimated average, approximately $9,414.50. *Id.*

Pursuant to the Agreement, the Net Settlement Amount from which the Settlement Class Members' pro rata shares were calculated equals approximately $2,244,085.90 (nearly

20% of the estimated maximum damages). *Id.* The money recovered herein is thus, arguably, 32% of Kinder Morgan's total exposure for unliquidated back wages for the entire three-year statutory period utilized – a strong result warranting this Court's approval.[9]

### f.   The Stage of Proceedings, Extent of Discovery Completed, and Risks of Continued Litigation.

At this stage, extensive formal and informal discovery has taken place, including the exchange of written discovery, data, documents, and certain personnel information. This exchange of information allowed the Parties to determine Oates and the Settlement Class Members' purported losses because of Kinder Morgan's alleged wage and hour violations. Additional discovery in this regard would not likely change the outcome of the Agreement as it relates to damages.

Prior to reaching a Settlement, Class Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Class Counsel certainly believes Oates's claim that Kinder Morgan's classification of the Inspectors and day-rate compensation plan violated the FLSA is strong and can be proven at trial, a finding of liability is never assured, especially in complex, hyper-technical litigation. Even with a strong factual and legal case, the Settlement Class Members face significant risks in

---

[9] *See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998) (holding the settlement should be a reflection of the total value of the claims discounted by the risks and costs of litigation); *see, e.g., Ma v. Covidien Holding, Inc.,* No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (where court found a settlement providing 9.1% of the total value of the action was "within the range of reasonableness."); *Rieve v. Coventry Healthcare, Inc.,*11-cv-1032 (ECF Nos. 243-1, 245) (C.D. Cal. 2014) (approving FLSA settlement where "the settlement of $3,000,000, before deductions, represents more than 29% of Plaintiffs' estimated maximum damages, assuming these amounts could be proven at trial.").

establishing liability and damages. Even assuming Oates proved the classification and day rate pay plan violated the FLSA, Oates may not have been able to prove Kinder Morgan's alleged violation was willful, thus negating an entire year's worth of potential damages. Further risks existed as they relate to summary judgment on the merits, as well as any appeal. Indeed, substantial risks and uncertainties were present from the outset of the case that made it far from certain any relief would be obtained.

And should the Court not approve the Parties' Agreement, additional expensive and time-consuming formal discovery will occur, and additional litigation will be necessary on issues relating to conditional certification and dispositive motions relating to the Parties' claims and defenses. Both Parties maintain their factual and legal positions are viable and they intend to vigorously litigate their positions in the absence of a settlement. The Parties' Agreement, therefore, avoids potentially costly litigation spanning months (or perhaps years) and the Settlement Class Members clearly benefit from the surety of recovery under the Settlement.

### g.    Class Counsel's Fee Award is Reasonable.

As discussed in greater detail *infra*, Class Counsel's Fee Award amounting to 35% of the Gross Settlement Amount is fair and reasonable. *See, e.g.*, *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). If the Court examines Class Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District), and that the

amount requested is fair and reasonable under the circumstances of this case. *See, e.g.*, *McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also Ostrander v. Customer Eng'g Servs., LLC*, No. 15-CV-1476- PAB-MEH, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund); *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (award equal to 37% of gross settlement amount "well within the normal range for a contingent fee award").

### iv.   The Proposed Service Award is Reasonable.

Oates's requested Service Award of $7,500.00 is reasonable, and Kinder Morgan does not object to the same. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable" in similar cases).

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the

plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131. Importantly, Courts in this Circuit have found significantly higher incentive awards reasonable in other FLSA/employment cases. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, Civ. A. No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010) (approving $10,000 service award to named plaintiff).

The proposed $7,500.00 service award to Oates is reasonable. The Service Award represents a mere 0.21% of the Gross Settlement Amount and is intended to recognize Oates's initiative and efforts on behalf of the Settlement Class Members and the time and effort he contributed to this lawsuit and the settlement over the last years. Indeed, Oates took a substantial risk in bringing the claims relating to Kinder Morgan's alleged FLSA violations. In doing so, Oates faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. Moreover, Oates expended significant effort and time in educating Class Counsel regarding the Inspectors' job experiences, compensation, and hours worked, as well as Kinder Morgan's policies and procedures. Likewise, Oates assisted throughout the litigation by providing documents and information related to his work for Kinder Morgan, helping prepare the Motion for Conditional Certification (including providing a supporting declaration for the same) to help the Settlement Class Members receive notice of

their opportunity to join this collective action, and participating in settlement discussions and

the settlement approval process to help ensure the Class Members recover their unpaid wages.

Oates also participated in numerous telephone conferences with Class Counsel and their staff

over the course of the litigation.

Because Oates took significant personal risks in representing the interests of the

Settlement Class Members and worked diligently to ensure they could recover the wages they

are allegedly due, the proposed $7,500.00 service award agreed to by the Parties is reasonable

to compensate him for these inherent risks and his substantial efforts on behalf of the

Settlement Class.

### C.   The Court Should Approve the Agreement and Notice Documents.

The Court should approve the Parties' proposed Notice of Settlement and

corresponding claim form (Ex. 2). The Parties modified their proposed Notice of Settlement

and claim form specifically to address the issues previously raised by the Court. *See* Doc.

176.The Parties agree these documents are the best practicable means of providing notice

under the circumstances and, when completed, shall constitute due and sufficient notice of

the proposed settlement. Indeed, the notice documents are accurate, objective, and

informative and provide the Settlement Class Members with all the information necessary to

make an informed decision regarding their participation in the Settlement and its fairness.

Accordingly, the Court should approve the Parties' proposed Notice of Settlement and claim

form (Ex. 2).

Preliminary approval of the Parties' Agreement will enable delivery of any approved

Notice documents to the Settlement Class Members in a manner best calculated to ensure they

are alerted to the terms of the settlement.  Every worker who elects to participate in this case because of the Notice will know the precise nature of this FLSA collective action lawsuit, what they are getting, and what they are giving up, prior to making an informed decision to participate. The Parties' proposed Notice of Settlement—which will be sent by the Settlement Administrator—provides the Settlement Class Members with adequate notice of their rights under the Agreement.  Moreover, the Claim Form and Release is a simple short form that permits Settlement Class Members to claim their settlement money quickly and easily.

> **D.    The Requested Attorney's Fees and Costs are Reasonable.**

Oates and Class Counsel believe the Agreement's provision concerning attorney's fees and costs is fair and reasonable, as Oates's Counsel is only seeking attorney fees amounting to 35% of the Gross Settlement Amount and reimbursement for expenses/costs. If approved, Kinder Morgan does not oppose Class Counsel's request for an attorney fee award of 35% of the Gross Settlement Amount and reimbursement of costs as provide for in the Agreement. Ex. 11 at ¶ 25. This amount represents a reduction from the 40% provided by the contingency fee agreement. *See id.*; Ex. 4 at ¶ 26.

Class Counsel's Fee Award in the amount of $1,244,700.10 is reasonable, fair and an important provision of the Parties' agreement. Ex. 1 at ¶ 9(h). The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308. An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of

31

fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In the Tenth Circuit, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir.1998); *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir.1993); *Lucken*, 2010 WL 5387559, at *2. In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482–83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in class actions, some courts

within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are historically applied in performing a lodestar analysis, and consist of: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.*  Considering the circumstances presented herein, Class Counsel's requested attorney fees and litigation expenses are imminently reasonable as both a percentage of the total common settlement fund and under the *Johnson* factors.

> **i.     FLSA Collective Actions are Inherently Complicated, and Class Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).**

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g., Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the Oates and the Settlement Class Members were improperly classified as independent contractors; (2) whether Oates and

the Settlement Class Members were exempt employees and paid on a "salary basis," and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA. Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006). FLSA collective action cases such as this are the focus of Class Counsel's docket. Although Class Counsel is based in Texas, both Josephson Dunlap, LLP and Brucker Burch, PLLC have a national docket of FLSA cases, with litigation across the United States. Ex. 11 at ¶¶ 3-10. In recent years, Class Counsel's joint docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers, such as this case. Further Class Counsel have litigated thousands of similar cases over the years with tremendous success. *Id.*

Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this and maximizes the settlement value of the case. *Id.* As one court has expressly noted, "the firms involved in this case on the Plaintiffs' side are among the most experienced and best regarded in this specialized practice area." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton*, 455 F. Supp. 3d at 207 (finding Class Counsel "conduct[s] themselves professionally,

demonstrate[s] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders.").

In addition to the number of potential Settlement Class Members, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6. And, as courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that Class Counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Class Counsel.

### ii.    The Time and Labor Required Was Substantial and Class Counsel's Requested Costs Are Reasonable (Factors 1 and 7).

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter has been pending for nearly two years. During this time, Class Counsel, with the assistance of numerous lawyers from several law firms and multiple staff members performed extensive work. *See* Ex. 11 at ¶¶ 10-14 (describing Class Counsel's time and effort spent on this case). This represents a significant amount of time expended to reach resolution of this case.

The Parties agree Class Counsel is entitled to out-of-pocket costs in an amount not to exceed $30,000.00. *See* Ex. 1 at ¶¶ 9(k), 16(c). To-date, Class Counsel has incurred $9,255.90 in unreimbursed costs and expenses. Ex. 11 at ¶ 24. Class Counsel expects to incur additional

costs associated with finalizing the Settlement and the settlement administration process. *Id.* To the extent Class Counsel's out-of-pocket expenses are less than $30,000.00, the Parties agree the difference will be redistributed and paid on a pro rata basis to the Participating Settlement Class Members. *See* Ex. 1 at ¶ 16(c).

"Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Class Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage and other delivery or service fees, Pacer charges, legal research, and mediation costs. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and under the Agreement, Kinder Morgan does not object to the same. *See* Ex. 1 at ¶¶ 9(k), 16(c); *see also* Ex. 4 at ¶ 26; Ex. 11 at ¶ 25.

### iii.   Class Counsel Represented Oates on a Contingency Fee (Factors 5, 6, 10, 12).

Next, the negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the Professional Services Agreement between Oates and Class Counsel provides for a contingency fee of 40% of the gross settlement amount, but Class Counsel is voluntarily reducing that amount as part of this settlement. Ex. 11 at ¶ 25. Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time

spent. Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery.

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724, at *6; *Shaw,* 2015 WL 1867861, at *4. The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

### iv.   Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

Class Counsel's request for attorneys' fees in the amount of 35% of the Gross Settlement Amount is well within the range of reasonableness for contingency fee cases in this Circuit. Oates originally agreed to a 40% contingency fee, but Class Counsel voluntarily reduced the agreed-upon attorneys' fees to 35%. Ex. 11 at ¶ 25. As some courts have noted, the "customary contingency fee" awarded to class counsel in a common fund FLSA collective action settlement such as this is approximately 30-40 percent. *See, e.g.*, *Cimarron Pipeline Construction, Inc. v. Nat'l Council on Compensation,* Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Lunt*, Civ. A. No. 15-cv-02262-CMA-KMT, Doc. 28 at pp. 5-6

(finding that attorneys' fees and expenses of 35% of the gross settlement amount "well within the normal range for a contingent fee award"); *Whittington*, 2013 WL 6022972 at *6 (approving award of attorney's fees of 39% of total settlement and noting "this [request] is within the normal range for a contingent fee award" in FLSA collective actions); *Lucken*, 2010 WL 5387559 at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (*citing, inter alia, Vaszlavik v. Storage Technology Corp.,* No. 95–B–2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable")).

The requested Fee Award of 35% sought by Class Counsel is also similar to fee awards deemed reasonable in other FLSA collective action cases in this Circuit. *See e.g.*, *Lunt*, Civ. A. No. 1:15-cv-2262 at Doc. 28, at p. 6 (approving award of attorney fees in the amount of 35% of the gross settlement amount in FLSA collective action where the Parties agreed to comprehensive settlement without first conditionally certifying the class of effected employees); *Price*, Civ. A. No. 1:15-cv-0745-WYD-KLM, at Doc. 80, pp. 1-2 (approving award of attorney fees in the amount of 37.5% of the gross settlement amount in FLSA collective action).

### v.     Degree of Success Obtained High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed, the degree of success here is high and supports Class Counsel's requested Fee Award. The estimated pro rata settlement shares are not unduly below what they could hope to receive

upon a full recovery after trial for willful violations during the relevant period. Ex. 11 at ¶ 22. On average, each Settlement Class Member's best day amounts to approximately $9,414.50 in unpaid overtime wages (unliquidated). This amount includes all money owed for third-year claims for which a willful violation must be shown. *Id.* Through the Parties' Agreement, the average Settlement Class Member's pro rata share for of the Net Settlement (based on their actual work history and days worked) amounts to approximately $1,882.62. *Id.* For these reasons, Class Counsel's negotiated fee of 35% and reimbursement of Class Counsel's advanced litigation expenses in an amount not to exceed $30,000 are reasonable and necessary in this case.

## V.   Conclusion.

For the reasons set forth in detail herein, the Court should preliminarily conditionally certify the Parties' proposed Settlement Class, preliminarily approve the Parties' Settlement Agreement (Ex. 1), and approve the Parties' proposed Notice of Settlement and corresponding claim form.

Respectfully submitted,

By:   */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas State Bar No. 24014780
OK Fed. ID No. 14-145
**Andrew W. Dunlap**
Texas State Bar No. 24078444
**Lindsay Itkin Reimer**
Texas State Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com

39

adunlap@mybackwages.com
litkin@mybackwages.com

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Michael Burrage**, OBA No. 1350
**WHITTEN BURRAGE**
512 North Broadway Ave., Suite 300
Oklahoma City, Oklahoma
405-516-7800 – Telephone
405-516-7859 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 14, 2022, the foregoing was filed electronically with the Clerk of Court using the ECF system, which sent notice to all known parties of the case in accordance with the Federal Rules of Civil Procedure.

*/s/ Michael A. Josephson*
Michael A. Josephson

## CERTIFICATE OF CONFERENCE

The undersigned attorney hereby certifies that Oates has conferred with Kinder Morgan and Kinder Morgan is not opposed to the relief sought herein.

*/s/ Michael A. Josephson*
Michael A. Josephson