## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID M. OATES,<br>on behalf of himself and<br>others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-1171-SLP |
| | ) | |
| KINDER MORGAN ENERGY<br>PARTNERS, L.P., | ) ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is Plaintiff's Unopposed Motion for Preliminary Conditional Certification of Proposed Settlement Class and for Preliminary Approval of the Parties' Proposed Settlement and Notice to the Proposed Settlement Class [Doc. No. 190].[1]  As more fully set forth below, Plaintiff's Motion is CONDITIONALLY GRANTED, subject to the directives imposed by this Order.

**I.**   **Background**

**A.**   **Plaintiff's Claims**

Plaintiff, David M. Oates (Named Plaintiff), brings this putative collective action against Defendant, Kinder Morgan Energy Partners, L.P., on behalf of himself and others similarly situated, alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C.

---

[1] Citations to Plaintiff's submissions reference the Court's ECF pagination.

§ 201 et seq. (FLSA).[2]  Named Plaintiff worked as a Day Rate Inspector and alleges that he was paid a flat daily rate for hours worked including those in excess of forty hours per week pursuant to a day rate pay plan.  Named Plaintiff alleges the day rate pay plan violates the FLSA because the Day Rate Inspectors did not receive overtime pay.

Named Plaintiff commenced this action on December 18, 2019.  *See* Compl. [Doc. No. 1]. Since that time, a total of eighteen individuals have filed notices of consent to join as plaintiffs in this action.[3]  As discussed infra, four of those individuals have been severed from this action, and a new action has been instituted on their behalf. Thus, in addition to Named Plaintiff, currently there are fourteen opt-in Plaintiffs.[4]

Defendant, Kinder Morgan Energy Partners, L.P. (Defendant or Kinder Morgan), has denied the allegations of the Complaint.   Defendant has also raised a number of affirmative defenses including that Named Plaintiff and others: (1) were subject to binding arbitration agreements; (2) were not its employees; (3) were exempt from the FLSA's

---

[2] The parties' briefing submissions and proposed settlement agreement and notice use the term "class" to refer to the nature of this action and the group of individuals entitled to relief in this action.  The Court, however, utilizes the term "collective" or "potential opt-in plaintiffs" as a collective action under the FLSA is distinct from a class action brought under Rule 23 of the Federal Rules of Civil Procedure.

[3] Although two other individuals filed consents, they were later withdrawn.  *See* Doc. Nos. 17, 33 and 64.

[4] The opt-in Plaintiffs, exclusive of those severed from this action, are Lucien Boutte, William DelaHoussaye, Kenneth Knapp, Robert Asch, Jr., Josef Ricketts, David Beall, William S. Reeves, Bonnie Dautriel, Mark McMahan, Anissa Mechling, Robert Evans, James Berry, Herman Medina and Scott Carter.  *See* Doc. Nos. 6, 16, 24-30, 34, 67, 70 and 82.

overtime requirements; (4) were paid lawfully under the applicable law; and (5) that Defendant acted in good faith.

Although the parties dispute liability, they have continuously engaged in settlement negotiations.  This is the parties' second attempt to obtain settlement approval from the Court.

### B.     First Motion for Settlement Approval

On May 25, 2021, Named Plaintiff filed an "Unopposed Motion to Approve FLSA Settlement [Doc. No. 122].  On January 18, 2022, the Court denied the Motion without prejudice.  *See* Order [Doc. No. 176].  The Court found the Motion was improper as Named Plaintiff had not moved for conditional certification of the FLSA collective.  *Id*. at 3-5.[5] The Court also provided a non-exhaustive evaluation of certain "concerns" it had regarding other aspects of the proposed Settlement Agreement.  *Id*. at 6-13.[6]

### C.     Motion to Compel Arbitration

On July 11, 2022, Intervenor Cleveland Integrity Services, Inc. (CIS) moved to compel arbitration as to four opt-in plaintiffs – Floyd Shropshire, Richard Hughes, James Whitaker, and Mike Snow.  Defendant did not respond to the motion and the four plaintiffs did not oppose the motion.  Notably, in the pending Motion, Named Plaintiff has advised

---

[5] Although Named Plaintiff had earlier moved for conditional certification, *see* Motion [Doc. No. 38], the Motion was withdrawn, *see* Notice [Doc. No. 49].

[6] Named Plaintiff's current submissions appear to have corrected many of these preliminary concerns.

the Court that the claims of these four plaintiffs would not be subject to the settlement and would be resolved separately.  *See* Mot., Doc. 190  at 9, n. 5.

The Court granted the motion to compel arbitration.  *See* Order [Doc. No. 194].  The Court severed the four opt-in plaintiffs and opened a new civil action.  *See id.; see also Floyd Shropshire, et al., v. Kinder Morgan Energy Partners, L.P.*, Case No. CIV-23-81-SLP (W.D. Okla.).  The claims of those four opt-in plaintiffs, therefore, are no longer pending in this action.

> **D.     Motion for Conditional Certification, Notice Approval and Preliminary Settlement Approval**

On July 14, 2022, Named Plaintiff filed the pending unopposed Motion seeking conditional certification of the proposed collective, approval of the proposed notice and preliminary approval of the proposed settlement agreement.  Having resolved the issue of arbitration and severed the claims of those four opt-in plaintiffs, the Court proceeds to address conditional certification, approval of the notice, and preliminary approval of the settlement.

## II.     <u>Governing Standards</u>

> **A.     FLSA Collective Action Conditional Certification**

Section 216(b) of the FLSA authorizes "one or more employees" to bring a collective action against their employer to recover unpaid wages or overtime compensation on "behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The term "similarly situated" is not defined by the FLSA but the Tenth Circuit has endorsed an ad hoc approach for determining whether putative plaintiffs are similarly

situated and, therefore, whether a collective action is appropriate. *See Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1102 (10th Cir. 2001).

Under this approach, the court engages in a two-step process. At step one, the initial "notice stage", the court determines only whether substantial allegations demonstrate that the putative class members were victims of a single decision, policy or plan. *Id*. By this determination, the court decides whether a collective action should be certified for purposes of sending notice of the action to potential opt-in plaintiffs. The standard at this initial step is meant to be "lenient." *Id*. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing a written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citations omitted).

In determining whether plaintiffs are victims of a single policy, the court can consider the substantial allegations of the complaint along with any supporting affidavits or declarations. *See, e.g., Thiessen*, 267 F.3d at 1102; *Renfro v. Spartan Computer Servs., Inc*., 243 F.R.D. 431, 434 (D. Kan. 2007); *Brown v. Money Tree Mortg., Inc*., 222 F.R.D. 676, 680–81 (D. Kan. 2004); *see also Roberts v. Target Corp*., No. CIV-11-0951-HE, 2013 WL 5256867 at *2 (W.D. Okla. Sept. 17, 2013) (unpublished op.) ("Substantial allegations . . . mean more than simply the averments of the complaint; . . . plaintiff must present some evidence establishing a colorable basis that the putative class members were all the victims of a single decision, policy, or plan."). In considering the submissions, the court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims. *Swartz v. D-J Engineering, Inc*., No. 12–1029-JAR, 2013 WL 5348585, *5 (D. Kan. Sept.

24, 2013); *Gieseke v. First Horizon Home Loan Corp.*, 408 F.Supp.2d 1164, 1166 (D. Kan. 2006)).   Nonetheless, the plaintiff must establish a "reasonable basis" for his claim that there are other similarly situated employees." *Aguilar v. Mgmt. & Training Corp.*, Civ. No. 16-050 WJ/GJF, 2017 WL 4277139 at *3 (D. N.M. Jan. 27, 2017) (*citing Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008)).

Here, Named Plaintiff asserts that the potential opt-in plaintiffs are Day Rate Inspectors whom Defendant classified as independent contractors, rather than employees, and paid a day-rate with no overtime compensation for hours worked over forty in a week. "Generally, where a defendant employs putative class members in similar positions, the allegation that defendant engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together victims of a single decision, policy or plan." *Christeson v. Amazon.com.ksdc, LLC*, No. CV-18-2043-KHV, 2019 WL 2137282, at *3 (D. Kan. May 16, 2019) (citations omitted).   The record contains substantial allegations demonstrating that Named Plaintiff, the opt-in plaintiffs and the potential opt-in plaintiffs were employed by Defendant: (1) in similar positions as Day Rate Inspectors; (2) during the Collective Period;[7] (3) classified as independent contractors; (4) paid on a day-rate basis; and (5) were not compensated for overtime work.  *See*, *e.g.*, Mot., Exs. 3-10 [Doc. Nos. 190-3 through 190-10].   Accordingly, Plaintiff has satisfied the low threshold at the

---

[7] The Collective Period, referenced in the proposed Settlement Agreement as the "Class Period" is defined as follows: "**Class Period**" means three years plus an additional 87 days that preceded the earlier of (a) the date the Settlement Class Member filed or otherwise opted-in to the Action, or (b) May 31, 2021." *See* Settlement Agreement [Doc. No. 190-1] at 3, **DEFINITIONS**, ¶ 9(d).

notice stage that all potential collective members are similarly situated for purposes of conditional collective action certification under section 216(b).   Moreover, Plaintiff represents that Defendant does not oppose conditional certification.  *See* Mot. at 15.  The Court finds, therefore, that conditional certification is proper and certifies the collective action for settlement purposes only.

### B.     Proposed Notice

"Under the FLSA, the Court has the power and duty to ensure that notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary."  *Creten-Miller v. Westlake Hardware, Inc*., No. 08-2351-KHV, 2009 WL 2058734 at * 2 (D. Kan. July 15, 2009) (citation omitted).  The parties have submitted two alternative forms of proposed notice.  *See* Doc. No 190-2, Exhibits 2-1 and 2-2.  The parties submitted the notices in anticipation of whether the Court would grant or deny Defendant's Motion to Reconsider the Court's Order denying the original motion for settlement approval.  *See* Pl.'s Mot. [Doc. No. 183] and Court's Order [Doc. No. 193].[8]  The two forms of the notice submitted appear to be identical except for the section entitled: "What Are My Rights?"

Although the Court denied the Motion to Reconsider, the Court reserved the issue of any deficiencies in the proposed notice.  *See* Doc. No. 193 at 3, n. 1.  The Court now turns to those deficiencies.

---

[8] Named Plaintiff filed a Notice [Doc. No. 186] advising the Court that he did not object to Defendant's Motion to Reconsider.

### 1.      What Are My Rights?

In each of the two forms of proposed notice, *see* Ex. 2-1 [Doc. No. 190-2] at 7; Ex. 2-2 [Doc. No. 190-2 at 18], the following language is included under the heading "What Are My Rights?":

- Participate in the Settlement and receive a Settlement Award by returning a fully executed Claim Form and Confidential W-9 by **[75 DAYS FROM MAILING]** via mail, fax, or email to:

  **[SETTLEMENT ADMIN CONTACT INFO]**

- Do nothing and receive no compensation.

- Disagree with the Settlement or some part of it by sending a letter via first class U.S. Mail to the Settlement Administrator identifying the specific reasons for your disagreement by **[40 DAYS FROM MAILING]**.

- Pursue an independent action against Kinder Morgan.

The form of proposed notice marked as Exhibit 2-1 ([Doc. No. 190-2] at 7) includes the following *additional* language:

- Opt-in to the Settlement, but not be bound by the Settlement advocated by Plaintiff, with the understanding that you will not be eligible to receive a Settlement Award and must independently pursue your claims against Kinder Morgan either pro se or using separate counsel.

*Id*. at 7.

The Court finds the What Are My Rights? section of the proposed Notice to be confusing.  First, the Notice directs that a potential opt-in plaintiff may "participate in the settlement" by returning a "fully executed Claim Form."  But the Notice should, following the proper procedure, not direct participation in a settlement, but rather, direct consent to join the FLSA collective action.   Participation in any settlement is only appropriate if an

individual first consents to join the FLSA collective action.  Thus, the Notice should clarify that an individual may consent to join the FLSA collective action and, by so joining, participate in the proposed settlement.  As discussed infra, the corresponding "Claim Form" should also be amended to clarify these issues.

Second, the Notice advises that an individual may "[d]o nothing and receive no compensation."  Use of the word "compensation" creates potential confusion.  The Notice should clarify that if an individual does nothing, that individual will not be deemed to be a part of the collective action and will not be permitted to participate in any settlement or receive payment of any settlement award.  *See, e.g., Landin v. UBS Servs. USA LLC*, No. 10-CIV-711-RMB-HBP, 2012 WL 488284 at *3 (S.D.N.Y. Feb. 14, 2012) (finding opt-in notice adequate where it informed putative members that failure to complete and submit a claim form in the manner and time specified shall constitute a waiver of any right to obtain any share of the settlement payment).

Third, the Notice advises that an individual may "[d]isagree with the Settlement or some part of it . . . ."  But again, the Notice is confusing.  It should clarify that an individual may disagree with the settlement only if they have consented to join in the collective action.  Preferably, such language would immediately follow the first point of the Notice discussed above.  The Notice should continue to include the language in the current version advising potential opt-in plaintiffs how to disagree with the settlement.  And the Notice should address how to complete the claim form if an individual opts-in but chooses to disagree with the settlement.

Fourth, although the Notice appropriately advises a potential opt-in plaintiff that pursuit of an individual action against Defendant is an additional right, the Notice should make clear that pursuit of an individual action is available only if the individual does not opt in to the collective action.

Finally, the Notice should advise an individual that even if they opt in, they have a right to not accept any settlement offer.  The additional language quoted above in the form proposed notice, *see* [Doc. No. 190-2] at 7, therefore, should be included in the Notice.

### 2.    Claim Form

Concomitant changes are required to the Claim Form which should be renamed to incorporate that the Claim Form also serves as a consent to join the suit. Revisions to the Notice should capture all references to the "Claim Form" and redesignate those references as directed so as to reflect that the form is both a consent to join suit and a claim form.  The Settlement Agreement should also be revised to reflect this change.

The Form currently includes the following language: "I hereby consent and agree to join this lawsuit in order to participate in the Settlement entered into by Plaintiff and Kinder Morgan, subject to final approval [sic] the Court."  *See* Claim Form [Doc. No. 190-2] at 20.  The typographical error (omission of the word by) should be corrected.  The Form should also separately address joining the lawsuit and disagreeing with the settlement or choosing not to be bound by the settlement.  Otherwise, the Form is inconsistent with the options set forth in the Notice.

The Court recognizes that most, if not all, opt-in individuals may wish to be represented by Plaintiff's counsel.  To this end, the Claim Form currently states: "I hereby

designate Michael A. Josephson and Taylor A. Jones of Josephson Dunlap LLP and Richard J. Burch, of Bruckner Burch PLLC, to represent me in this action. This language, however, is inconsistent with the right set forth in the Notice that an opt-in individual may retain their own counsel or appear pro se. Accordingly, the language must be modified.

Several of the issues identified by the Court might be corrected by including separate spaces or boxes to check regarding, inter alia, opting in to the collective; approval or disagreement with the settlement; consent to be bound by any approved settlement and/or consent to representation by Plaintiff's counsel. The Court leaves it to the parties to determine how best to modify the Claim Form to eliminate the concerns and issues noted.

### 3.    Notice Authorized by Court

The Court is concerned that the reference to a "Court Authorized Notice" in conjunction with use of the case style could be confusing and misleading as to the Court's neutrality in this matter. The Notice should instead state: "This Notice is not an advertisement from a lawyer. The United States District Court for the Western District of Oklahoma has authorized this Notice. As set forth in the Notice, the Court has not made any decision regarding the merits of any claims or defenses in this action. Instead, the Notice is to advise you of certain rights you may have, including the right to participate in a proposed Settlement regarding overtime pay from Kinder Morgan Energy Partners, LP." *See, e.g., In re Wells Fargo Wage & Hour Emp't Practices Litig.*, No. H-11-2266, 2013 WL 2180014 at *5 (S.D. Tex. May 17, 2013) (permitting language advising notice was "court authorized" subject to omission of the case style and use of the term "court authorized" in the bold title of the notice); *Cooper v. Integrity Home Care, Inc.*, No. 4:16-

cv-01293-DGK, 2017 WL 1628974 at *5 (W.D. Mo. May 1, 2017) (requiring similar changes to notice to avoid appearance of court bias).

For these same reasons, the parties should omit from the third sentence of the Notice the language "the Court in charge of this Lawsuit has agreed that this Notice should be sent".  Instead, the sentence should read: "You received this Notice because you have been identified as a current or former Inspector who was provided to work on Kinder Morgan projects by one or more of the Vendor Companies listed below and allegedly paid a day rate while working on Kinder Morgan's projects."

### 4.   Additional Forms of Notice – Email, Text and Telephone Scripts

Attached to the Motion as Exhibit 12 is a proposed email and telephone script as an additional means of providing notice.  The Motion fails to address this exhibit or explain why these additional forms of notice are needed.  The only reference to the email and telephone script is contained in the Settlement Agreement under the heading **CERTIFICATION, NOTICE, AND SETTLEMENT IMPLEMENTATION** in paragraph 11(d) headed **Notice**.  That paragraph of the Settlement Agreement also references notice by text message but the form of any text message notice has not been provided to the Court.  Generally, these additional forms of notice have been authorized as "reasonable in today's mobile society."  *See, e.g, Bowling v. DaVita*, No. 21-CV-03033-NYW-KLM, 2023 WL 4364140 at *10 (D. Colo. July 6, 2023).  Although the Court will permit these additional forms of notice, the parties are directed to supply the Court with the form of the text message notice for the Court's review and approval.  Also, the Court

notes there is a single reference to notice by "fax" in the Proposed Telephone Script.  *See* Doc. No. 190-12 at 3.  The reference to "fax" should be deleted.

### 5.     Notice of Fairness Hearing

The Notice should include information about the date and time of the Court's fairness hearing for purposes of any final approval of the settlement.[9]  The parties, therefore, are directed to incorporate such information in the Notice.

### 6.     Resubmission of Proposed Notice, Claim Form, Telephone Script, and Text Message Notice

Within twenty one days of the date of this Order, the parties are directed to resubmit a proposed notice, claim form, revised telephone script and the proposed text message notice that addresses each of the issues identified by the Court.

## C.     FLSA Collective Action Preliminary Settlement Approval

### 1.     Preliminary Matters

The Court first addresses some preliminary matters that are problematic with the Settlement Agreement.  First, the Named Plaintiff is the only current plaintiff who has signed and approved the Settlement Agreement.  As set forth above, however, there are fourteen additional *current* opt-in Plaintiffs.  There is nothing in the record to show that these opt-in Plaintiffs have consented to the settlement.  *See Marichal v. Attending Home Care Servs. LLC,* 432 F. Supp.3d 271, 279 (E.D.N.Y. 2020) ("[T]he named plaintiff and

---

[9] The Court will set the hearing date and time once it finally approves the Notice.   The parties may offer to the Court for consideration a mutually agreeable time and date for setting the hearing.

his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff – as a party to the case – is required.").

The consents filed by the opt-in Plaintiffs do not address settlement.  Instead, the consents address being bound by "the Judgment of the Court or arbitrator on all issues in this case."  *See, e.g.*, Consent of Robert Asch, Jr. [Doc. No. 24].  It appears the parties intend to send notice to potential opt-in plaintiffs.  It is not apparent to the Court, however, that the parties have structured the opt-in and settlement procedures so that the current opt-in Plaintiffs will be providing their consent as to settlement.

The Court admonishes the parties that prior to any final approval of the Settlement Agreement, proof of consent to the Settlement Agreement by the fourteen current opt-in Plaintiffs is required.  *See Marichal*, 432 F.Supp. 3d at 280 (recognizing practical difficulties of dealing with a large number of opt-in plaintiffs and noting a common approach to facilitate opt-in plaintiffs' consent to a settlement is to send notice to "extant collective members, giving them the opportunity to opt into the settlement, as well as to other employees who have not previously joined to give them the opportunity to opt into the collective and accede to the settlement").[10]

---

[10] The Court acknowledges that in the section of the Settlement Agreement headed **MISCELLANEOUS**, paragraph 32 headed **Authorization to Enter Into Settlement Agreement** states:

> Counsel for all Parties are expressly authorized by the Parties to whom they represent to enter into this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement.

Second, in the section of the Settlement Agreement headed **CERTIFICATION, NOTICE, AND SETTLEMENT IMPLEMENTATION**, under paragraph 14 headed "**Dismissal of the Action**" the last sentence must be removed.  That sentence reads: "The only remaining claims in this Action involve opt-in plaintiffs supplied by Cleveland Integrity Services to Kinder Morgan which are not subject to this agreement and will be resolved separately."  As previously set forth, the four opt-in plaintiffs supplied by Cleveland Integrity Services have been severed from this action.

Third, the Settlement Agreement references both versions of the proposed Notice at p. 4, footnote 1.  Upon final approval of the Notice, footnote 1 should be omitted.  Additionally,  Exhibit A to the Settlement Agreement should be corrected to reflect the form of the Notice and Claim Form finally approved by the Court.

### 2. Preliminary Approval

Subject to resolution of the above issues and the additional matters addressed infra, the Court finds preliminary approval of the Settlement Agreement is proper.

To approve the FLSA settlement, the Court must find that: (1) the litigation involved a bona fide dispute; (2) the proposed settlement is fair and reasonable to all parties concerned; and (3) the proposed settlement contains an award of reasonable attorney's fees

---

*See* Settlement Agreement [Doc. No. 190-1] at 12.  But under the terms of the Settlement Agreement, "Parties"  does not include the current opt-in Plaintiffs.  *See id.* at 2, ¶ 1 (This Settlement Agreement and Release (the "Settlement Agreement") is entered into between "David Oates ("Oates") on the one hand, and Kinder Morgan Energy Partners, LP, on the other hand (Kinder Morgan Energy Partners, LP, on the other hand ("Kinder Morgan") (hereinafter, all together as the "Parties") . . . .").

and costs. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The Court underscores that these matters are addressed solely in the context of preliminary approval. *See, e.g., CO Craft, LLC v. Grubhub Inc*., No. 20-cv-01327-NYW-NRN, 2023 WL 3763525 at *4 (D. Colo. June 1, 2023) (addressing, under Rule 23, distinction between preliminary and final approval of class settlement and noting that the standards are less stringent at the preliminary approval stage). The issues of fairness and reasonableness of the proposed settlement and the award of reasonable attorney's fees and costs is directly tied to the ultimate number of opt-in plaintiffs and, therefore, subject to further factual development.

### a.     Bona Fide Dispute

The Court is satisfied that a bona fide dispute exists between the parties. Plaintiff alleges that Defendant misclassified putative collective members as independent contractors and consequently, did not pay members overtime rates for hours worked over forty. Defendant maintains that it properly classified these members and denies any liability for overtime rates. Defendant has also raised other affirmative defenses and contests that any recovery for liquidated damages and any allegation that a violation of the FLSA was willful. Thus, the Court finds a bona fide dispute exists.

### b.     Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class or collective action settlement. *See, e.g., Dail v. George A. Arab*

*Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins*

*v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 721 (E.D. La. 2008) (evaluating collective

action).   The Tenth Circuit considers the following factors when deciding whether to

approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly

and honestly negotiated the settlement; (2) whether serious questions of law and fact exist

which place the ultimate outcome of the litigation in doubt; (3) whether the value of an

immediate recovery outweighs the mere possibility of future relief after protracted

litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

### i.       Fair and Honest Negotiation of Settlement

Named Plaintiff represents that the settlement was fairly and honestly negotiated,

pointing to the involvement of "highly experienced wage-and-hour attorneys with

significant FLSA experience."  Mot. at 31.  Those attorneys gathered substantial data from

Kinder Morgan's vendors showing the days worked and compensation received by Plaintiff

and the potential opt-in plaintiffs.  Named Plaintiff further represents that the parties went

through "numerous offer and demand cycles" and that "[s]ettlement negotiations were

formally facilitated by an experienced FLSA mediator[.]." *Id*.  Named Plaintiff also points

to his approval of the settlement based on his receipt of a "substantial benefit." *Id*.  These

representations provide reasonable evidence that the settlement is the result of non-

collusive, arms-length negotiations. *See, e.g., German v. Holtzman Enters., Inc*., No. 19-

cv-03540-PAB-STV, 2023 WL 3585212 at *9 (D. Colo. May 22, 2023) (where settlement

is "preceded by a lengthy period of adversarial litigation and substantial discovery and is

the result of negotiation before a third-party mediator, settlement is likely to be found to be honestly negotiated (citing *Newberg on Class Actions*, § 13:14 (6th ed.)).  Based on the representations of Named Plaintiff's counsel and a review of the record, the Court preliminarily finds the settlement is the result of fair and honest negotiations.

### ii.     Serious Questions of Law and Fact

As previously set forth, this action involves whether Kinder Morgan properly classified Named Plaintiff (including the opt-in Plaintiffs, and the potential-opt-in plaintiffs) as independent contractors, the hours worked by these individuals, whether Kinder Morgan acted in good faith and whether Kinder Morgan acted willfully.  For substantially the same reasons as addressed by the Court in finding a bona fide dispute exists, the Court finds that serious questions of law and fact underlie the proposed settlement.

### iii.    The Value of the Settlement to the Putative Collective

Named Plaintiff represents that this action is a "hotly contested case" with respect to the issue of liability pointing to Kinder Morgan's denial of liability and citing cases where day rate employees were found not to be entitled to overtime.  *See* Mot. at 33 (citing cases).  In this context, immediate recovery offered by a settlement is significant.

The settlement provides the putative collective action members with "an estimated average recovery" of $2,983.46 with a "maximum" award of $16,298.55.  Named Plaintiff notes that the scope of the settlement does not prevent any opt-in plaintiff from recovering unpaid overtime from the Vendor Companies should they elect to do so.

Upon review, the Court preliminarily finds the value of the settlement outweighs the possibility of recovery after protracted litigation. The proposed settlement ensures members of the collective will receive reasonable compensation in light of the substantial uncertainties of litigation to a judgment. The value of the settlement will be subject to further factual development at the final approval stage.

### iv.   The Parties View of the Settlement

Here, Plaintiff and Kinder Morgan agree that the settlement is fair and reasonable. At the preliminary approval stage, therefore, the Court finds this factor weighs in favor of finding the settlement is fair and reasonable.

In sum, for the reasons set forth, the Court finds that each of the factors weighs in favor of preliminary approval of the settlement.

### c.   Attorney's Fees, Costs and Service Award

The FLSA provides for an award of reasonable attorney's fees and the costs of the action. *See* 29 U.S.C. § 216(b).   As part of the settlement, Plaintiff's counsel seeks an award of attorney's fees in the amount of $1,244,700.10 which is 35% of the Gross Settlement Amount of $3,556,286.00. Generally, a fee award representing 35% has been found to be reasonable. *See, e.g., Voulgaris v. Array Biopharma, Inc*., 60 F.4th 1259, 1263-64 (10th Cir. 2023) (acknowledging – outside the FLSA context – that a "range of percentages" may represent a reasonable attorney's fee from common fund settlements and citing awards from 22% to 37.3%) to be reasonable). Thus, for purposes of preliminary approval, the Court finds this amount to be reasonable. But as the Court previously stated, the size of the collective is currently unknown and the size of any unclaimed portion of the

funds could impact the reasonableness of the requested fee award.  *See* Order [Doc. No. 176] at 11.   Moreover, the Court expresses no view at this time as to whether the lodestar or percentage of the fund method should apply.  *See, e.g.*, *Cordova-Gonzalez v. TW Lath-N-Stucco, Inc*., No. 21-cv-01617-CMA-MDB, 2023 WL 1767242 at *6 (D. Colo. Feb. 3, 2023) (noting that in the Tenth Circuit, either method is permissible but it appears that a preference exists for the percentage-of-fund method) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). The Court reserves that issue for the final determination of the reasonableness of the fee award.  The Court further notes in this regard that no evidence has been provided regarding the billing rates of Named Plaintiff's counsel or the hours expended to date.  Such evidence may be required at the final approval stage.

Plaintiff also seeks an award of costs.  To date, the costs incurred total $9,255.90 and the parties agree to costs not to exceed $30,000.00.  Plaintiff anticipates additional costs associated with finalizing the settlement and administrating the settlement process. To the extent the costs are less than $30,000.00, the difference will be redistributed and pain on a pro rata basis to the participating settlement collective members.   The costs include court costs and filing fees, photocopying and duplication, postage and other deliver or service fees, pacer charges, legal research and medication costs.  *See* Josephson Aff. [Doc. No. 190-11], ¶ 24.  The Court preliminarily finds an award of costs is reasonable under these circumstances.   Any final approval, however, will be conditioned on satisfactory evidentiary support.

The Court must further consider whether the requested service award of $7,500.00 to Named Plaintiff is reasonable.  A named plaintiff may be entitled to an incentive or

service award as part of a class or collective action settlement.  *See, e.g. Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017)*, Hoffman v. Poulsen Pizza, LLC*, No. 15-2640-DDC, 2016 WL 2848919 at *4 (D. Kan. May 16, 2016) (citations omitted).  The reasonableness of the fee award is determined in light of the amount of time the plaintiff spend on the case.  Other factors the court may consider include the actions the plaintiff took to protect the interests of the collective, the degree to which the collective has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation.  *Pilego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 131 (D. Colo. 2016).

Here, Named Plaintiff has described his role in assisting with the litigation and the proposed settlement, including providing documents and information related to his work for Kinder Morgan.  Named Plaintiff has also addressed the potential retaliation he faced in doing so.  As to the latter, Named Plaintiff only speculates as to any potential retaliation. *See, e.g. Chieftan*, 888 F.3d at 467 & n. 6 (noting presentation of evidence as to risk and burden to named plaintiff to justify incentive award was "quite weak").  Nonetheless, based on the assistance Named Plaintiff has provided in the case, a service award is appropriate and the Court concludes that the requested service fee is reasonable.  *Compare Pilego*, 313 F.R.D. at 131 (finding $7,500.00 enhancement award to named plaintiff in FLSA collective action reasonable and "commensurate with awards in similar cases"); *Dickerson v. Zayo Group, LLC,* No. 20-CV-02490-DDD-NRN, 2022 WL 18777094 at *7 (D. Colo. Oct. 31, 2022) (addressing range of service awards approved by courts in the Tenth Circuit to include awards of $7500.00).

But the Court finds the scope of the release as to Named Plaintiff is overly broad. The Settlement Agreement includes Named Plaintiff's release of an array of claims including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964, ERISA claims, ADA claims, FMLA claims and other claims. *See* Settlement Agreement, **RELEASES**, ¶ 10(a). Release clauses in FLSA settlements generally must be limited to claims related to the specific litigation, i.e., wage and hour claims. *See, e.g., Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-ADM, 2021 WL 5038773 at *10 (D. Kan. Oct. 29, 2021); *Payton-Fernandez v. Burlington Stores, Inc*., No. 22-608 (AMD), 2023 WL 3145140 at *10 (D.N.J. Apr. 28, 2023). Therefore, the release should be narrowed to wage and hour claims consistent with the language of the release set forth in the Claim Form for the potential opt-in plaintiffs.

### d.    FLSA Preliminary Settlement Approval

For the reasons set forth, the Court preliminarily finds: (1) this litigation involves a bona fide dispute, (2) the proposed Settlement Agreement is fair and equitable to all parties; and (3) the proposed Settlement Agreement contains an award of reasonable attorney's fees, costs and service award. The Court, therefore, conditionally grants preliminary approval of the Settlement Agreement, subject to the following:

(1) the parties must provide information to the Court to address the issue of consent to the settlement by the current opt-in Plaintiffs;

(2) the parties must resubmit the proposed Notice and Consent Form to reflect the changes as directed in this Order;[11]

(3) the parties must resubmit the Settlement Agreement to reflect the changes as directed in this Order.

Upon compliance with these directives, the Court will enter a separate order preliminarily approving the settlement.

## III.   <u>Conclusion</u>

IT IS THEREFORE ORDERED that Plaintiff's Unopposed Motion for Preliminary Conditional Certification of Proposed Settlement Class and for Preliminary Approval of the Parties' Proposed Settlement and Notice to the Proposed Settlement Class [Doc. No. 190] is GRANTED as to conditional certification and the Court conditionally certifies this action as a collective action for purposes of settlement.

IT IS FURTHER ORDERED that Plaintiff's Unopposed Motion is CONDITIONALLY GRANTED as to Preliminary Approval of the Parties' Proposed Settlement and Notice to the Proposed Settlement Class subject to compliance with the terms of this Order.

IT IS FURTHER ORDERED that within 21 days of the date of this Order, the parties shall submit the items as directed herein to the Court for further review and approval.

---

[11] This should include resubmission of the telephone script and submission of the proposed text message notice as directed.

23

IT IS FURTHER ORDERED if the parties deem a status conference or hearing would assist in their compliance with this Order, within seven days of the date of this Order the parties shall file a joint request so advising the Court.

IT IS SO ORDERED this 12th day of September, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE